UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KANWARPREET THIND, on behalf of himself
and all others similarly situated,

                        Plaintiff,

            -against-                                    Case No.:  14-cv-9539 (LGS)

HF   MANAGEMENT   SERVICES,   LLC,   d/b/a
HEALTHFIRST,

                        Defendant.


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CONDITIONAL CERTIFICATION AND NOTICE
PURSUANT TO 29 U.S.C. § 216(b)**

Samuel Veytsman, Esq.
Alexander T. Coleman, Esq.
Michael J. Borrelli, Esq.

BORRELLI & ASSOCIATES, P.L.L.C
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
(516) 248-5550
(516) 248-6027
*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS......................................................................................................... ii

TABLE OF AUTHORITIES ..........................................................................................iii-vi

I.      PROCEDURAL HISTORY AND PERTINENT FACTS.................................................. 1

        A.      Plaintiff and His Claims........................................................................................ 1

        B.      Summary of Relevant Facts and Completed Discovery ......................................... 2

II.     ARGUMENT.................................................................................................................... 6

        A.      The Remedial Purpose of the FLSA Warrants Prompt and Accurate Notice to
                Potential Collective Action Members.................................................................... 6

        B.      Plaintiffs Have More Than Satisfied the Lenient Standards for Conditional
                Certification and Notice to the Potential Collective Action Members ................... 8

        C.      The Court Should Order that Notice Be Sent to Potential Collective Action
                Members and Order Defendant to Produce Complete Contact Information for their
                Managers for Sales and Facilitated Enrollers and that Defendant Post Notice ..... 14

        CONCLUSION................................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Statutes**

29 U.S.C. § 216(b) ................................................................................ 1, 6, 7, 9

29 U.S.C. § 255(a) .......................................................................................... 6

**Federal Cases**

Avila v. Northport Car Wash, Inc.,
774 F. Supp. 2d 450 (E.D.N.Y. 2011) ........................................................ 15

Benitez v. Demco of Riverdale, LLC,
2015 WL 3780019 (S.D.N.Y. June 15, 2015) ............................................ 12

Bifulco v. Mortgage Zone, Inc.,
262 F.R.D. 209 (E.D.N.Y. 2009) ............................................................. 6, 9

Bowens v. Atl. Maint. Corp.,
546 F. Supp. 2d 55 (E.D.N.Y. 2008) ........................................................... 9

Braunstein v. Eastern Photographic Labs., Inc.,
600 F.2d 335 (2d Cir. 1978) ........................................................................ 7

Chhab v. Darden Restaurants, Inc.,
2013 WL 5308004 (S.D.N.Y. Sept. 30, 2013) ...................................... 14, 16

Colon v. Major Perry Street Corp.,
2013 WL 3328223 (S.D.N.Y. Jul. 2, 2013) ............................................... 16

Cuzco v. Orion Builders, Inc.,
477 F. Supp. 2d 628 (S.D.N.Y. 2007) ....................................................... 13

Dilonez v. Fox Linen Service, Inc.,
2014 WL 3893094 (E.D.N.Y. July. 25, 2014) ........................................... 17

Doucoure v. Matlyn Food, Inc.,
554 F. Supp. 2d 369 (E.D.N.Y. 2008) ....................................................... 13

Enriquez v. Cherry Hill Market Corp.,
2012 WL 440691 (E.D.N.Y. Feb. 10, 2012)............................................................. 12

Fang v. Zhuang,
2010 WL 5261197 (E.D.N.Y. Dec. 1, 2010) ............................................................ 13

Fasanelli v. Heartland Brewery, Inc.,
516 F. Supp. 2d 317 (S.D.N.Y. 2007).............................................................. 7, 10, 15

Fonseca v. Dircksen & Talleyrand, Inc.,
2014 WL 1487279 (S.D.N.Y. Apr. 11, 2014)........................................................... 15

Gortat v. Capala Bros., Inc.,
2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ............................................................ 6, 9

Harhash v. Infinity West Shoes, Inc.,
2011 WL 4001072 (S.D.N.Y. Aug. 24, 2011)........................................................... 16

Harper v. Government Employees Ins. Co.,
826 F. Supp. 2d 454 (E.D.N.Y. 2011) ...................................................................... 7, 8

Harrington v. Education Management Corp.,
2002 WL 1009463 (S.D.N.Y. May 17, 2002) ........................................................... 13

Hernandez v. Merrill Lynch & Co., Inc.,
2012 WL 1193836 (S.D.N.Y. Apr. 6, 2012)............................................................. 15

Hoffmann v. Sbarro Inc.,
982 F. Supp. 249 (S.D.N.Y. 1997) ..................................................................... *passim*

Iriarte v. Redwood Deli and Catering, Inc.,
2008 WL 2622929 (E.D.N.Y. Jun. 30, 2008) ........................................................... 13

Jackson v. Bloomberg, L.P.,
298 F.R.D. 152 (S.D.N.Y. 2014) .............................................................................. 9

Jason v. Falcon Data Com, Inc.,
2011 WL 2837488 (E.D.N.Y. Jul. 18, 2011)........................................................... 10

Juarez v. 449 Restaurant, Inc.,
29 F. Supp. 3d 363 (S.D.N.Y. 2014) ........................................................................ 12

Kassman v. KPMG, LLP,
2014 WL 3298884 (S.D.N.Y. July 8, 2014) ....................................................... 1, 5, 8

Kim v. 511 E. 5th Street, LLC,
985 F. Supp. 2d 439 (S.D.N.Y. 2013) ...................................................................... 10

Klimchak v. Cardrona, Inc.,
2011 WL 1120463 (E.D.N.Y. Mar. 24, 2011) ......................................................... 15

Laroque v. Domino's Pizza, LLC,
557 F. Supp. 2d 346 (E.D.N.Y. 2008) ................................................................. 7, 10

LeGrand v. Education Management Corp.,
2004 WL 1962076 (S.D.N.Y. Sept. 2, 2004) ........................................................... 13

Limarvin v. Edo Rest. Corp.,
2013 WL 371571 (S.D.N.Y. Jan. 21, 2013) ............................................................ 16

Marin v. Apple-Metro, Inc.,
2014 WL 7271591 (E.D.N.Y. Dec. 18, 2014) .................................................... 10, 14

Masson v. Ecolab, Inc.,
2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ......................................................... 13

Morangelli v. Chemed Corp.,
275 F.R.D. 99 (E.D.N.Y. 2011) ................................................................................ 9

Myers v. The Hertz Corp.,
624 F.3d 537 (2d Cir. 2010) ...................................................................................... 1

Patton v. Thomson Corp.,
364 F. Supp. 2d 263 (E.D.N.Y. 2005) ..................................................................... 13

Pefanis v. Westway Diner, Inc.,
2008 WL 4546526 (S.D.N.Y. Oct. 8, 2008) ........................................................... 13

Puglisi v. TD Bank, N.A.,
998 F. Supp. 2d 95 (E.D.N.Y. 2014) .......................................................................... 16

Raniere v. Citigroup Inc.,
827 F. Supp. 2d 294 (S.D.N.Y. 2011).......................................................................... 15

Ravenell v. Avis Budget Car Rental, LLC,
2010 WL 2921508 (E.D.N.Y. Jul. 19, 2010) ............................................................ 7-9

Rosario v. Valentine Avenue Discount Store, Co., Inc.,
828 F. Supp. 2d 508 (E.D.N.Y. 2011) ................................................................. 10, 16

Sanchez v. El Rancho Sports Bar Corp.,
2014 WL 1998236 (S.D.N.Y. May 13, 2014) ............................................................. 17

Sharma v. Burberry Ltd.,
2014 WL 4385426 (E.D.N.Y. Sept. 4, 2014) ............................................................. 16

Sobczak v. AWL Industries, Inc.,
540 F. Supp. 2d 354 (E.D.N.Y. 2007) ........................................................................ 13

Thompson v. World Alliance Fin. Corp.,
2010 WL 3394188 (E.D.N.Y. Aug. 20, 2010)............................................................. 15

Whitehorn v. Wolfgang's Steakhouse, Inc.,
767 F. Supp. 2d 445 (S.D.N.Y. 2011)................................................................... 15-16

Winfield v. Citibank, N.A.,
843 F. Supp. 2d 397 (S.D.N.Y. 2012)................................................................... 14-15

Young v. Cooper Cameron Corp.,
229 F.R.D. 50 (S.D.N.Y. 2005) .................................................................................. 15

Zhao v. Benihana, Inc.,
2001 WL 845000 (S.D.N.Y. May 7, 2001) ................................................................. 13

Plaintiff Kanwarpreet Thind ("Plaintiff") moves this Court for an Order conditionally certifying this case as a Fair Labor Standards Act ("FLSA") collective action pursuant to 29 U.S.C. § 216(b).  The Court should grant the instant Motion so that additional current and former "Managers"[1] and "Facilitated Enrollers" who did not receive overtime or minimum wage compensation can be notified of their right to participate in this lawsuit.  Such an Order would be in accordance with the overwhelming precedent in this Circuit of granting conditional certification of FLSA collective actions after plaintiffs have made a "modest factual showing" to meet their very low burden. Myers v. The Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010); Kassman v. KPMG, LLP, 2014 WL 3298884, at *6-9 (S.D.N.Y. July 8, 2014) (Schofield, J.) ("Plaintiffs have made a modest factual showing that they and the potential opt-in plaintiffs are similarly situated and together were victims of a common policy or plan that violated the law.") (internal quotations omitted).

## I.   PROCEDURAL HISTORY AND PERTINENT FACTS

### A.   Plaintiff and His Claims

Plaintiff worked both as a "Facilitated Enroller" and as a "Manager" selling low-cost health insurance for Defendant. Declaration of Kanwarpreet Thind ("Thind Decl.") (Ex. 3), ¶¶ 1-3, 10; Deposition of Kanwarpreet Thind ("Thind Depo.") (Ex. 5) at 8, 13.[2]  On December 3, 2014, Plaintiff filed the original Complaint in this matter alleging violations of the FLSA and the New York Labor Law ("NYLL") on behalf of himself and all other similarly situated employees in the title of "Manager" and in the title of "Facilitated Enroller" against HF Management

---

[1] The Complaint and Amended Complaint refer to this position as "Manager for Sales," as it is commonly called by Defendant's staff.  However, the deposition of Defendant's 30(b)(6) witness revealed that "the correct name of the position is "Manager."  The remainder of this document, accordingly, will refer to this position as "Manager" and not "Manager for Sales."

[2] Exhibits to the Declaration of Samuel Veytsman are cited as "Ex."

Services LLC, d/b/a Healthfirst ("Defendant").[3] Declaration of Samuel Veytsman (Veytsman Decl.), ¶ 2; Complaint (Ex. 1). In it, as is relevant to this motion, Plaintiff alleged, *inter alia*, that Defendant misclassified Plaintiff and other similarly situated Managers as exempt employees and, as a result, in violation of the FLSA, did not pay them at any rate of pay, let alone the statutorily required rate of one and one-half times their hourly rate for each hour worked beyond forty each week. Complaint (Ex. 1) ¶ 2. Plaintiff further alleged that Defendant did not pay Plaintiff and other similarly situated Facilitated Enrollers at their overtime rates of one and one-half times their respective straight-time rates of pay for all hours worked in excess of forty each week, and did not compensate them at the statutorily mandated minimum wage rate for all hours worked. Complaint (Ex. 1), ¶ 2. On February 20, 2015, Plaintiff filed an Amended Complaint, reiterating, in sum and substance, the allegations stated above. Veytsman Decl., ¶ 3; Amended Complaint (Ex. 2).

To date, two individuals, former Manager Ada Cheung and current Facilitated Enroller Bin Yang, have opted into this case. Veytsman Decl. ¶ 7.

### B.   Summary of Relevant Facts and Completed Discovery

Defendant administers insurance plans for residents of the New York metropolitan area. Deposition of Stephanie Kelly, Healthfirst Vice President of Human Resources ("Kelly Depo.") (Ex. 4) at 13. Plaintiff worked for Defendant as a Facilitated Enroller from August 24, 2009 to January 25, 2012. Amended Complaint (Ex. 2), ¶¶ 31-32; Thind Decl. (Ex. 3), ¶ 3. On or about January 25, 2012, Defendant promoted Plaintiff to the position of Manager, which Plaintiff held

---

[3] Notably, the Defendant had previously been sued for virtually identical violations of wage and hour laws in the United States District Court for the Eastern District of New York in the matter of *Willix v. Healthfirst, et al.*, Docket Number 07-cv-01143 (RER). In November 2010, Defendant agreed to pay nearly $7.7 million to settle that action.

until August 21, 2014. Amended Complaint (Ex. 2), ¶ 32; Thind Decl. (Ex. 3), ¶ 10; Thind Depo. (Ex. 5) at 13.

On June 9, 2015, Plaintiff conducted the deposition of Stephanie Kelly, currently a Vice President of Human Resources for Defendant, in her capacity as the 30(b)(6) witness designated by Defendant. Kelly Depo. (Ex. 4) at 12.   Defendant's deposition revealed that all Managers generally perform the same job duties based on a common job description and generally spend the same percentage of their time on each such duty. Kelly Depo. (Ex. 4) at 23-24, 26, 33-34. The Manager position primarily involves compiling weekly reports, reviewing applications completed by Facilitated Enrollers, and operating community events. Amended Complaint (Ex. 2), ¶ 39; Kelly Depo. (Ex. 4) at 38; Thind Decl. (Ex. 3), ¶ 10.   Managers operate out of a variety of community locations and are considered field based employees. Kelly Depo. (Ex. 4) at 15; Thind Depo. (Ex. 5) at 35, 78.   They receive the same minimal basic training for the job and only receive additional training if they elect to or are required to because of poor performance. Kelly Depo. (Ex. 4) at 36-42; Thind Decl. (Ex. 3), ¶ 21; Thind Depo. (Ex. 5) at 35, 78.   The Manager position has been substantially the same since at least the end of 2011. Kelly Depo. (Ex. 4) at 79. At any given time Defendant employs approximately fifteen-to-twenty Managers similarly situated to Plaintiff. Kelly Depo. (Ex. 4) at 13.   Managers regularly worked more than forty hours per week. Amended Complaint (Ex. 2), ¶ 45; Thind Decl. (Ex. 3), ¶ 14, 16; Thind Depo. (Ex. 5) at 256-257.   Because Defendant misclassified Managers as exempt, it maintained a common practice of not paying them at any of rate of pay for the hours they worked beyond forty per week. Amended Complaint (Ex. 2), ¶ 45; Thind Decl. (Ex. 3), ¶ 16; Kelly Depo. (Ex. 4) at 65-66; Thind Depo. (Ex. 5) at 306.   In fact, Defendant maintained the common practice of paying Managers the same amount of money for each biweekly pay period regardless of hours

3

worked. Amended Complaint (Ex. 2), ¶ 46; Kelly Depo. (Ex. 4) at 65-66; Thind Decl. (Ex. 3), ¶ 16-17, 19-22; Thind Depo. (Ex. 5) at 306-307.  Defendant did not track the hours worked by Managers each day other than to have them self-record whether a specific day was or was not a working day. Kelly Depo. (Ex. 4) at 87.

Defendant's deposition further revealed that Facilitated Enrollers are field-based employees whose job duties include interacting with "both existing [Healthfirst] members and members of the public who have an interest in enrolling" in the plans offered by Defendant. Kelly Depo. (Ex. 4) at 87.  Facilitated Enrollers work at community-based open enrollment sites and attend appointments with potential enrollees. Kelly Depo. (Ex. 4) at 87.  Although Facilitated Enrollers may approach enrollment differently based on the site or area they are working in, their primary job duty remains the same. Kelly Depo. (Ex. 4) at 88.

At any given time, Defendant employs approximately 250-to-300 Facilitated Enrollers, all of whom are similarly situated to Plaintiff when he held that position, as well as to each other. Kelly Depo. (Ex. 4) at 13.  Facilitated Enrollers are paid biweekly on an hourly basis. Kelly Depo. (Ex. 4) at 90.  Facilitated Enrollers often must work more than forty hours a week to complete the enrollment numbers that Defendant expects of them. Thind Decl. (Ex. 3), ¶ 6. While Defendant establishes nominal work schedules for Facilitated Enrollers, these schedules cannot be complied with as a practical matter because members or potential members regularly arrive at an open arrival site just prior to the end of Facilitated Enrollers' shifts and Facilitated Enrollers are obligated to tend to such members or potential members. Thind Decl. (Ex. 3), ¶ 4. Moreover, Facilitated Enrollers often work overtime because they are penalized for not meeting certain enrollment quotas, which cannot be accomplished within a forty hour workweek. Thind Decl. (Ex. 3), ¶ 6.  Although Defendant is aware that Facilitated Enrollers cannot meet the goals

set for them without working overtime, it often does not pay its Facilitated Enrollers any compensation for hours worked over forty per week, informing them that there is simply no budget for such compensation. Thind Decl. (Ex. 3), ¶ 9.

Although, as discussed below, the merits of the claims in this case are not presently before the Court on this motion, the evidence demonstrates a consistent pattern of wrongdoing by Defendant, shows a common policy to violate the FLSA, and clearly indicates that there are numerous Managers and Facilitated Enrollers who are similarly situated to Plaintiff and to each other and who worked for Defendant and did not receive compensation for all hours worked in accordance with the FLSA.  In short, Defendant is extracting hours from its workforce without properly compensating its employees.  For purposes of this conditional certification motion, Plaintiff's declaration, taken in conjunction with Defendant's deposition testimony, is more than sufficient to illustrate that "'similarly situated plaintiffs do in fact exist.'" Kassman, 2014 WL 3298884, at *5 (quoting Hoffman v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997) (*Sotomayor, J.*)).

Discovery is ongoing.  Plaintiff and Defendant have conducted one deposition each and have both noticed additional depositions.  Veytsman Decl., ¶ 9. Defendant has provided Plaintiff with well over 200,000 pages of documents.  Id. at  ¶10.  To date Plaintiff has only had an opportunity to review a fraction of this enormous production.  Id.

In short, Plaintiff has met his minimal burden for the Court to grant the present motion and conditionally certify this case as a collective action.

## II.   ARGUMENT

### A.   The Remedial Purpose of the FLSA Warrants Prompt and Accurate Notice to Potential Collective Action Members.

The FLSA specifically provides that any employer who fails to pay its employees the required overtime or minimum wage compensation:

> [s]hall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).  The statute also provides for collective actions to recover such damages "by any one or more employees for or on behalf of [himself] or themselves and other employees similarly situated." Id.

Pursuant to 29 U.S.C. § 216(b), and unlike Rule 23 class actions, an individual who wishes to join a collective action must file with the court a written consent that the action may proceed on his/her behalf within the applicable statute of limitations.[4] Id.  "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of certifying a class." Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009).  But, under the FLSA collective procedure, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Until an absent collective action member opts-in, the statute of limitations on his/her claims continues to run. 29 U.S.C. § 255(a); Gortat v. Capala Bros., Inc., 2010 WL 1423018, at *9 (E.D.N.Y. Apr. 9, 2010).  It is thus important that notice be given promptly to preserve the claims of collective action members, and it is not uncommon for courts to approve expedited

---

[4] An action seeking unpaid overtime and minimum wage compensation and liquidated damages must be commenced within two years or, where the action arises out of a willful violation of the statute, as alleged here, within three years. 29 U.S.C. § 255(a).

notice. *See* Hoffmann, 982 F. Supp. at 262; Braunstein v. Eastern Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978).

In Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165 (1989), the Supreme Court recognized the importance of collective members receiving "accurate and timely" notice about a pending FLSA action so that they can take action.  The "collective action" mechanism provides individuals with "the advantage of lower individual costs to vindicate rights by the pooling of resources." Id. at 170.  Even though 29 U.S.C. § 216(b) does not require parties to obtain judicial approval before seeking to advise other similarly situated persons of their FLSA rights, district courts routinely expedite and facilitate notice to potential opt-in plaintiffs by "conditionally certifying" the § 216(b) collective. See, e.g., Hertz, 624 F.3d at 554; Harper v. Government Employees Ins. Co., 826 F. Supp. 2d 454, 457 (E.D.N.Y. 2011) ("the court considers only whether the employees to whom notice is requested to be sent are similarly situated to the plaintiff"); Ravenell v. Avis Budget Car Rental, LLC, 2010 WL 2921508, at *2 (E.D.N.Y. Jul. 19, 2010) ("plaintiffs must only satisfy this fairly lenient standard and the court typically grants conditional certification").  Conditional certification furthers the FLSA's "broad remedial purpose," Braunstein, 600 F.2d at 336, *accord* Hoffman, 982 F. Supp. at 262-63, and is justified by the court's "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." Hoffman-LaRoche, 493 U.S. at 170-71; Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007) ("when determining whether a matter shall proceed as a collective action, courts should be mindful of the remedial purposes of the FLSA").  As the Supreme Court has observed, the benefits of a 29 U.S.C. § 216(b) collective action "depend on employees receiving accurate and timely notice

concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffman-LaRoche, 493 U.S. at 170; *accord, e.g.*, Hertz, 624 F.3d at 554.

**B.      Plaintiff Has More Than Satisfied the Lenient Standards for Conditional Certification and Notice to the Potential Collective Action Members.**

The sole requirement for granting a motion for conditional certification and authorizing notice is "merely to determine whether similarly situated plaintiffs do in fact exist." Kassman, 2014 WL 3298884, at *5; see also Hertz, 624 F.3d at 555; Harper, 826 F. Supp. 2d at 457.  This is only a preliminary determination because, as the Second Circuit has recognized, in this Circuit, courts "have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible." Hertz, 624 F.3d at 554-55.  "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. at 555; Hoffman, 982 F. Supp. at 261.  "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Hertz, 624 F.3d at 555 (quoting Hoffman, 982 F. Supp. at 261)).

The plaintiff's burden at this first stage is "necessarily low." Kassman, 2014 WL 3298884, at *5; Harper, 826 F. Supp. 2d at 457.  The Second Circuit explained why:

> The modest factual showing . . . should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist.

Hertz, 624 F.3d at 555 (citation omitted).

The standard, accordingly, is a lenient one and "the court 'typically grants conditional certification.'" Ravenell, 2010 WL 2921508, at *2.  As Justice Sotomayor wrote when sitting on the district court, at this stage, "[t]he burden on plaintiff is not a stringent one, and the Court

need only reach a preliminary determination that plaintiffs are similarly situated." Hoffman, 982 F. Supp. at 261; *accord*, *e.g.*, Ravenell, 2010 WL 2921508, at *2; Bowens v. Atl. Maint. Corp., 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008) ("FLSA's opt-in provision merely provides an opportunity for potential plaintiffs to join and is only a preliminary determination as to which potential plaintiffs may in fact be similarly situated.") (citations omitted).

It is at the second stage, "after plaintiffs have opted in and there has been discovery," where the court makes factual findings and determines based "upon a full record . . . whether the additional plaintiffs are similarly situated to the original plaintiffs." Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 159 (S.D.N.Y. 2014) (quoting Indergit v. Rite Aid Corp., 2010 WL 2465488, at *4 (S.D.N.Y. June 16, 2010)); Hertz, 624 F.3d at 555; Bifulco, 262 F.R.D. at 212.  Thus, the term "[conditional certification] is a misnomer and may obfuscate the leniency of the standard employed to authorize plaintiffs' counsel to send notices of the action." Morangelli v. Chemed Corp., 275 F.R.D. 99, 104 n.1 (E.D.N.Y. 2011).

There are good reasons why the first stage burden is low.  As Judge Glasser cogently explained:

> Because the statute of limitations for FLSA claims continues to run for each individual plaintiff until he or she opts in, see 29 U.S.C. § 216(b), early certification and notice are favored in order to protect plaintiffs' rights.  Thus, only a minimal evidentiary burden is imposed in order to satisfy the 'similarly situated' requirement . . . . [t]he heightened scrutiny standard is only appropriate after the opt-in period has ended and the court is able to examine whether the actual plaintiffs brought into the case are similarly situated.  It would not sensibly serve the purposes of a two-step scheme to impose on plaintiffs a heightened burden of proving that as-yet-unknown plaintiffs are similarly situated.

Gortat, 2010 WL 1423018, at *9-10.

Concomitant with the minimal burden and the fact that the members of the collective action are not yet before the court, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at the conditional certification stage. Rosario, 828 F. Supp. 2d at 515.  Courts therefore do not weigh the merits of the underlying claims in determining whether potential opt-ins are similarly situated. Marin v. Apple-Metro, Inc., 2014 WL 7271591, at *3 (E.D.N.Y. Dec. 18, 2014) (courts "in this Circuit regularly conclude that competing declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process.  Reviewing such competing declarations would require the Court to evaluate credibility and determine the facts.  Such actions are inappropriate at this stage."); Kim v. 511 E. 5th Street, LLC, 985 F. Supp. 2d 439, 447 (S.D.N.Y. 2013) ("The Defendants first argue that [plaintiff] cannot assert any claims under the FLSA because, rather than being an 'employee' of [defendant], he was merely an 'independent contractor' . . . . The Court, however need not engage in this inquiry now.  At this preliminary stage, whether [plaintiff] will eventually succeed on the merits of his FLSA claim is immaterial.") (citing Lynch, 491 F. Supp. 2d at 368); Jason v. Falcon Data Com, Inc., 2011 WL 2837488, at *5-6 (E.D.N.Y. Jul. 18, 2011) (defendants' argument that the common policy did not violate the law is ultimately a merits argument and is unpersuasive at first stage). Fasanelli, 516 F. Supp. 2d at 322 ("To the extent that Defendants' opposition relies on a detailed factual dispute about whether the Defendants maintain an 'illegal off-the-clock' policy, 'illegal tip retention' policy, or fail to pay the minimum wage, that inquiry is misplaced as those issues go to the merits of the case."); Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008) ("The standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification.  Once the plaintiff makes a colorable claim for relief, the

only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff.").

> ### i.    *The record demonstrates that Plaintiff clearly meets his "light" burden.*

Plaintiff regularly worked over forty hours per week during his time as a Manager and during his time as a Facilitated Enroller and Defendant failed to compensate Plaintiff at one-and-one-half times his regular rate of pay for these overtime hours in both positions. Thind Decl. (Ex. 3), ¶¶ 6-9, 14-16.   Plaintiff has personal knowledge that there are other similarly situated Managers that Defendant did not properly compensate for all overtime hours worked, or at the minimum wage rate for every hour worked inasmuch as it misclassified them as exempt. Thind Decl. (Ex. 3), ¶ 25.   Plaintiff also has personal knowledge of other Facilitated Enrollers who were not properly compensated for all overtime hours worked, or at the minimum wage rate for every hour worked. Thind Decl. (Ex. 3), ¶ 25.   In fact, Plaintiff identifies by name six Managers and five Facilitated Enrollers that he personally knows to be similarly situated to him. Thind Decl. (Ex. 3), ¶ 25.

Even more to the point, Defendant admits that at any given time it employs at least fifteen Managers and 250 Facilitated Enrollers. Kelly Depo. (Ex. 4) at 30.   Defendant further admits that all employees within each of these job categories perform generally the same duties, undergo the same basic training, are subject to the same policies and procedures, and are paid in the same manner. Kelly Depo. (Ex. 4) at 15, 23-24, 26, 33-34, 36-42, 65-66, 87-88, 90.

More specifically, Defendant has admitted that Managers are similarly situated to Plaintiff and to each other, inasmuch as:

- all Managers perform similar job duties and spend approximately the same percentage of time on each duty (Kelly Depo. (Ex. 4) at 23-24, 26, 33-34);

- all Managers performing the primary job duties of compiling weekly reports, reviewing applications completed by Facilitated Enrollers and operating community events (Amended Complaint (Ex. 2), ¶ 39; Kelly Depo. (Ex. 4) at 38; Thind Decl. (Ex. 3), ¶ 10); and

- Defendant has classified all Managers as exempt, salaried employees and thus has not paid them for hours worked over forty per week (Kelly Depo. (Ex. 4) at 65-66).

Likewise, Defendant's Facilitated Enrollers are similarly situated to Plaintiff and to each other, inasmuch as:

- all Facilitated Enrollers have a primary job duty of interacting with "both existing [Healthfirst] members and members of the public who have an interest in enrolling" in the plans offered by Defendant (Kelly Depo. (Ex. 4) at 87); and

- Defendant requires all Facilitated Enrollers to work at community based open enrollment sites and attend specific appointments with potential enrollees (Kelly Depo. (Ex. 4) at 87);

- Defendant classified Facilitated Enrollers as non-exempt and pays them on a biweekly basis at an hourly rate (Kelly Depo. (Ex. 4) at 90);

- Defendant does not pay Facilitated Enrollers for all overtime hours worked (Thind Decl. (Ex. 3) ¶¶ 6-9).

The above-stated facts are more than sufficient for Plaintiff to meet his "necessarily low" burden and make his "modest factual showing." Indeed, courts in this Circuit regularly grant conditional certification motions on such evidence as the complaint, or the complaint and one or two affidavits. See e.g., Benitez v. Demco of Riverdale, LLC, 2015 WL 3780019, at *4 (S.D.N.Y. June 15, 2015) (no opt-ins); Juarez v. 449 Restaurant, Inc., 29 F. Supp. 3d 363, 369 (S.D.N.Y. 2014) (no opt-ins); Enriquez v. Cherry Hill Market Corp., 2012 WL 440691, at *2

(E.D.N.Y. Feb. 10, 2012) ("there is no requirement in this circuit that a certain number of Covered Employees opt-in before a court can conditionally certify a class . . . courts routinely allow plaintiffs to rely on their own declarations for purposes of conditional certification."); Fang v. Zhuang, 2010 WL 5261197, at *3 (E.D.N.Y. Dec. 1, 2010) (no opt-ins, one affidavit of named Plaintiff); Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 374 (E.D.N.Y. 2008) (finding that Plaintiffs "well-pleaded allegations," and nothing more, were sufficient to justify mailing notice to potential collective action members); Iriarte v. Redwood Deli and Catering, Inc., 2008 WL 2622929, at *3 (E.D.N.Y. Jun. 30, 2008) (no opt-ins, one affidavit of named Plaintiff); Pefanis v. Westway Diner, Inc., 2008 WL 4546526, at *1 (S.D.N.Y. Oct. 8, 2008) (no opt-ins); Sobczak v. AWL Industries, Inc., 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) ("Courts regularly grant motions for approval of a collective action notice based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees."); Cuzco v. Orion Builders, Inc., 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007) (no opt-ins) ("The single named Plaintiff here has met his burden by successfully demonstrating that there are other workers who are similarly situated to him, and that is enough for this matter to move forward."); Patton v. Thomson Corp., 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005) (no opt-ins, one affidavit of named Plaintiff); Masson v. Ecolab, Inc., 2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005) (two opt-ins); LeGrand v. Education Management Corp., 2004 WL 1962076, at *2 (S.D.N.Y. Sept. 2, 2004) (three declarations); Harrington v. Education Management Corp., 2002 WL 1009463, *2-3 (S.D.N.Y. May 17, 2002) (no opt-ins); Zhao v. Benihana, Inc., 2001 WL 845000, at *2-3 (S.D.N.Y. May 7, 2001) (one affidavit based on Plaintiff's "best knowledge" was enough to grant certification).

In short, given the pleadings, the state of discovery, Plaintiff's declaration, and the Defendant's corporate testimony, Plaintiff here more than satisfied his "modest" burden of demonstrating that the two proposed collectives are sufficiently similarly situated to justify sending notice.

C.     **The Court Should Order that Notice Be Sent to Potential Collective Action Members and Order Defendants to Produce Complete Contact Information for their Managers for Sales and Facilitated Enrollers and that Defendants Post Notice.**

Based on the foregoing, the Court should authorize notice. See Hertz, 624 F.3d at 555.  A proposed Notice is attached as Exhibit 5 to the Veytsman Declaration.  The proposed notice provides clear instructions on how to opt-in, and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action.  The proposed notice is "timely, accurate, and informative," thus meeting all legal requirements. See Hoffmann-La Roche, Inc., 493 U.S. at 172.  The proposed notice also achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action and should be adopted.

In order for Plaintiff to provide notice of the action, Plaintiff requests that the Court order the Defendant to produce the names and updated contact information for those individuals who work or worked for Defendant as Managers or Facilitated Enrollers within three years from the date of filing of the Complaint.  Plaintiff's requested notice period harmonizes with the practice of district courts within this Circuit permitting plaintiffs to send notice to similarly situated persons "employed within three years of the filing of the complaint, 'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" Chhab v. Darden Restaurants, Inc., 2013 WL 5308004, at *15 (S.D.N.Y. Sept. 30, 2013) (quoting Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012)); Marin, 2014

14

WL 7271591, at *3 (permitting notice period "to run from three years prior to commencement of the action, rather than the date of the notice"); Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (extending notice period to three years prior to filing complaint); Thompson v. World Alliance Fin. Corp., 2010 WL 3394188, at *7 (E.D.N.Y. Aug. 20, 2010) (explaining how the notice period should include "the earliest possible date that an opt-in plaintiff in this case may have been last employed by Defendants," which was three years before the plaintiffs filed their complaint); Fasanelli, 516 F. Supp. 2d at 323, n.3 (authorizing notice for three year period from the filing of Plaintiffs' complaint).[5]

Accordingly, in addition to conditionally certifying the collective action, Plaintiff requests that the Court order Defendant to produce to Plaintiff the following within twenty-one days of its Order:

> A list, in electronic format, of all persons who worked for Defendant as Managers for Sales or Facilitated Enrollers at any point between December 3, 2011 and the present, including: names, addresses, telephone numbers, e-mail addresses, and dates of employment.

See, e.g., Raniere v. Citigroup Inc., 827 F. Supp. 2d 294, 327-28 (S.D.N.Y. 2011); Young v. Cooper Cameron Corp., 229 F.R.D. 50, 56-57 (S.D.N.Y. 2005); see also Hernandez v. Merrill Lynch & Co., Inc., 2012 WL 1193836, at *7 (S.D.N.Y. Apr. 6, 2012) ("in this day of electronic communication, courts have authorized defendants to provide email address[es] as well.").[6]

---

[5] Courts in this Circuit even authorize notice dating back six years before filing where, as here, the complaint alleges violations of the New York Labor Law in addition to violations of the FLSA. Fonseca v. Dircksen & Talleyrand, Inc., 2014 WL 1487279, at *6 (S.D.N.Y. Apr. 11, 2014); Winfield, 843 F. Supp. 2d at 410 (noting that "several courts in this Circuit have deemed it appropriate to grant six-year rather than three-year notice periods" where plaintiffs also assert NYLL claims) (collecting cases); Avila v. Northport Car Wash, Inc., 774 F. Supp. 2d 450, 455 (E.D.N.Y. 2011); Klimchak v. Cardrona, Inc., 2011 WL 1120463, at *7 (E.D.N.Y. Mar. 24, 2011). Plaintiff is not requesting that here, but simply notes it to emphasize the reasonableness of his proposed notice period.

[6] Plaintiff respectfully reserves the right to request social security numbers to perform a skip trace if any mailings are returned as undeliverable.

Plaintiff also requests that the Court authorize Plaintiff to send out a deadline reminder notice to potential class members so as to be received thirty days prior to the deadline.  Doing so would advance the FLSA's purpose "to inform as many potential plaintiffs as possible of the collective action and their right to opt in." Chhab, 2013 WL 5308004, at *16; see also Sharma v. Burberry Ltd., 2014 WL 4385426, at *21 (E.D.N.Y. Sept. 4, 2014) (granting request to disseminate reminder notices); Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014) (authorizing plaintiffs to send reminder notices); Limarvin v. Edo Rest. Corp., 2013 WL 371571, at *3-4 (S.D.N.Y. Jan. 21, 2013) (same).  Thus, the Court should allow Plaintiff to send reminder notices to all potential collective members.

Plaintiff also requests that the Court order Defendant to post the notice and consent forms in a conspicuous place at the work location of potential collective action members. See, e.g., Rosario, 828 F. Supp. 2d at 521 (E.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); Harhash v. Infinity West Shoes, Inc., 2011 WL 4001072, at *5 (S.D.N.Y. Aug. 24, 2011) ("Courts in this District routinely order that Notice be posted in common areas or employee bulletin boards, even when notice is also provided via first-class mail."); Whitehorn, 767 F. Supp. 2d at 449 (same).

Lastly, Plaintiff requests that the Court authorize that the notices, both mailed and posted, be translated into Hindi, Bengali, Urdu, Spanish and Mandarin, and circulated in English, Hindi, Bengali, Urdu, Spanish and Mandarin. Thind Decl. ¶ 22 (several Facilitated Enrollers and Managers speak Hindi, Bengali, Urdu, Spanish and Mandarin as their first language).  Courts have routinely allowed Notices and Consent forms to be circulated in the "mother tongue of non-English speaking groups of potential plaintiffs." Colon v. Major Perry Street Corp., 2013 WL

3328223, *8 (S.D.N.Y. Jul. 2, 2013) (Spanish); <u>Dilonez v. Fox Linen Service, Inc.</u>, 2014 WL

3893094 (E.D.N.Y. July. 25, 2014) (Spanish); <u>Sanchez v. El Rancho Sports Bar Corp.</u>, 2014 WL

1998236 (S.D.N.Y. May 13, 2014) (Spanish).   Circulating the notice in Mandarin, Hindi,

Bengali, Spanish, Urdu and English ensures that similarly-situated employees whose primary

language is Mandarin, Hindi, Bengali, Spanish and Urdu will receive proper notice of this action.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) conditionally

certify this case as a collective action; (2) order Defendant to produce a computer-readable data

file containing all potential collective action members' names, last known mailing addresses, last

known telephone numbers, last known email addresses, and dates of employment; (3) authorize

Plaintiff to send the proposed notice and consent forms in the English, Mandarin, Hindi, Bengali,

Spanish and Urdu languages to the potential collective action members; (4) order Defendant to

post in a conspicuous place the notice and consent forms in the English, Hindi and Mandarin

languages at their work location; and (5) authorize Plaintiff to send a reminder notice to the

potential collective action members to be received thirty days prior to the close of the Notice

period.

Dated:  Great Neck, New York
       June 25, 2015

                                   Respectfully submitted,

                                   BORRELLI & ASSOCIATES, P.L.L.C.
                                   *Attorneys for Plaintiffs*
                                   1010 Northern Boulevard, Suite 328
                                   Great Neck, New York 11021
                                   Tel.    (516) 248–5550
                                   Fax.    (516) 248–6027

                       By:         <u>s/Samuel Veytsman</u>
                                   SAMUEL VEYTSMAN, ESQ.
                                   ALEXANDER T. COLEMAN, ESQ.
                                   MICHAEL J. BORRELLI, ESQ.