# LEVINE LEE LLP

## NEW YORK

666 Fifth Avenue
New York, New York 10103
212 223 4400 main
212 223 4425 fax
www.levinelee.com

**Scott B. Klugman**
212 257 4030 direct
sklugman@levinelee.com

April 7, 2016

<u>VIA ECF</u>

Honorable Lorna G. Schofield
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *Thind v. HF Management Services, LLC*, Civil Docket No. 14-9539 (LGS)

Dear Judge Schofield:

      We respectfully submit this letter on behalf of Defendant HF Management Services, LLC ("Healthfirst") pursuant to Section III.A.1 of the Court's Individual Rules to request a pre-motion conference to seek leave to file a motion to decertify Collective Action B prior to Opt-in deposition discovery. Collective Action B includes 70 Facilitated Enrollers ("FEs") who have filed written consents to join this action and responded to Healthfirst's written discovery requests (collectively, the "Opt-in FEs"). Documentary discovery establishes that Healthfirst did not maintain a *de facto* policy of requiring all FEs to work "off-the-clock," as alleged in the Amended Complaint, and that the Opt-in FEs' Fair Labor Standards Act ("FLSA") claims are not subject to collective proof. Rather, approximately 70% of the Opt-in FEs who responded to discovery demands admit that they never were directed to work off-the-clock. Given that these admissions contradict the Amended Complaint and refute the existence of the alleged policy to violate the FLSA, we respectfully submit that there is good reason to address the certification issue at this time to avoid unnecessary effort and expense in connection with depositions of the remaining Opt-in FEs.

      Alternatively, should the Court not entertain a motion to decertify the FE collective action at this stage, Healthfirst requests a conference regarding the setting of an appropriate program for depositions and the remainder of discovery. It is clear that the Amended Complaint's allegations of a *de facto* "off-the-clock" work policy are no longer valid for the vast majority of the Opt-in FEs. As such, we believe that a conference is necessary to ensure that the discovery process is not wasteful and that issues concerning the appropriate manner in which to proceed are addressed.

      **I.**    **Background**

      By Order dated July 31, 2015, the Court conditionally certified Collective Action B comprised of Healthfirst employees who worked as FEs. (ECF No. 55; *see* 7/30/15 Tr. at 2-3.) Assuming that the Court

will grant Healthfirst's unopposed pending letter motion to dismiss the Opt-in Plaintiffs who failed to respond to written discovery (ECF No. 243, 245), 70 Opt-in FEs will remain in this case.

The Collective Action B FLSA claim does not allege that Healthfirst had an express company policy that violated the FLSA. Indeed, the Amended Complaint acknowledges that Healthfirst classified FEs as overtime-eligible employees (Am. Compl. ¶ 2), and Healthfirst's written policies required that FEs record all of their hours using a clock-in/clock out system. The Amended Complaint instead alleges that Healthfirst had a *de facto* policy by which FEs "were required to work in excess of forty hours each workweek" and "were not paid the required [overtime rate]." (*Id.* ¶ 12.) As evidence of the alleged *de facto* policy, the one named Plaintiff, Kanwarpreet Thind, submitted a declaration attesting that his supervisor on various occasions directed him to clock out but continue working after eight hours of work on a given day. (ECF No. 46-2.) Mr. Thind further attested that his supervisor directed him to work on certain weekends without clocking in at all. (*Id.*)

Healthfirst propounded interrogatories concerning off-the-clock work to the Opt-in FEs, including asking that they each "identify each person who, at any time, directed him/her to work off-the-clock, *i.e.* at a time when he/she was not punched in or clocked in." Contrary to the allegations of the Amended Complaint, approximately 70% of the remaining Opt-in FEs (48 of 70 Opt-in FEs) admitted in response to this interrogatory that they were never directed to work off-the-clock.

In addition, Healthfirst deposed the one remaining Opt-in FE who filed a written consent prior to conditional certification, Navjot Kaur. Similar to the great majority of Opt-in FEs who responded to Healthfirst's interrogatories, Ms. Kaur testified that Healthfirst never required her to work off-the-clock. She further testified that no one at Healthfirst had knowledge of her off-the-clock work, which she testified, with one exception, was comprised of sporadic, brief conversations with prospective enrollees as she was leaving work. In fact, she testified that she would not even "call [these] conversations really working . . . you're just talking to the person in the lobby." Ms. Kaur and the Opt-in FEs' admissions collectively demonstrate that the *de facto* policy alleged in the Amended Complaint did not exist.

**II.     Discussion**

In this Circuit, courts apply a two-step process when deciding to certify a FLSA collective action. *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). The first step, known as conditional certification, occurred in this case in July 2015. The second step requires that a court, "on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id* at 555. At the second step, courts apply a "more 'stringent standard' of proof," and "[t]he burden is on the named plaintiff to prove that all class members are similarly situated." *Morano v. Intercontinental Capital Grp., Inc.*, No. 10-CV-02192 (KBF), 2012 WL 2952893, at *5 (S.D.N.Y. July 17, 2012). Where the complaint is based on a deviation from a lawful policy to pay overtime (here, a *de facto* off-the-clock policy) Plaintiff must demonstrate that the deviation is "sufficiently uniform and pervasive as to warrant class treatment." *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 463 (S.D.N.Y. 2011); *see also Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 299-300 (S.D.N.Y. 2015) (decertifying a FLSA class because plaintiffs failed to show "a common policy that operated to common effect"). While the second step typically occurs at the close of discovery, the admissions of the Opt-in FEs and other documentary evidence establish that Plaintiff will not be able to meet his burden to establish that this case should proceed as a collective action.

The Opt-in FEs' own admissions conclusively demonstrate that Healthfirst did not have a *de facto* policy of directing FEs to work off-the-clock.  As noted above, 70% of the Opt-in FEs have sworn that they were never directed to work off-the-clock, and the one Opt-in FE who has been deposed similarly testified that she was never directed to work off the clock.  In this regard, the great majority of the Opt-in FEs are not similarly situated to the named Plaintiff who averred that his immediate supervisor directed him to work at times that he was not clocked in.

Plaintiff will not be able to establish that the alleged *de facto* policy was "sufficiently uniform and pervasive as to warrant class treatment."  *Zivali*, 784 F. Supp. 2d at 463.  The Opt-in FEs' interrogatory responses show that they were supervised by no fewer than 40 different managers at locations scattered through New York City and Long Island.  *See Morano*, 2012 WL 2952893, at *1 (in decertifying collective, finding that "plaintiffs worked in no fewer than seven branch locations, each with its own branch manager" responsible for "instruct[ing] them on their work hours.").  The FEs' pay records also reflect significant disparities in the frequency and amount of overtime pay received by the Opt-in FEs.  While nearly every Opt-in FE received overtime pay, the amount of paid overtime varied widely, from under one hour each year to well over 100 hours each year in many cases.  Thus, to the extent the Opt-in FEs even claim that they worked off-the-clock, the already apparent factual disparities would require resolution of individualized inquiries not susceptible to class-wide proof, including, but not limited to, whether each Opt-in FE's manager had actual or constructive knowledge that he or she was working off-the-clock, the amount of off-the-clock work, and whether each Opt-in FE was exempt from the FLSA's overtime requirements.  *See, e.g.*, *Zivali*, 784 F. Supp. 2d at 467-68.  These individualized inquiries would necessarily require individualized summary judgment motions and potentially individualized mini-trials should the Opt-in FEs' FLSA claims survive dismissal.

Given that these factual disparities are already apparent, we respectfully submit that decertification is appropriate now prior to the parties engaging in the time and expense of conducting scores of Opt-in depositions.  Accordingly, we respectfully request a pre-motion conference to seek leave to file a motion seeking the decertification of Collective Action B.  Alternatively, should the Court not decertify the FE collective action at this stage, Healthfirst requests a conference regarding the setting of an appropriate program for discovery in light of the fact that the claims as plead lack viability for the vast majority of the Opt-in FEs.

Respectfully submitted,

Levine Lee LLP

 s/ Scott B. Klugman
Scott B. Klugman

cc:  Counsel for Plaintiff (via ECF)