UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KANWARPREET THIND, on behalf of himself and all other similarly situated,

                Plaintiff,

v.

HF MANAGEMENT SERVICES, LLC, d/b/a HEALTHFIRST,

                Defendant.

Civil Docket No. 14-cv-09539-LGS

ECF Case

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DECERTIFY COLLECTIVE ACTION B**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .................................................................................................. 1

**BACKGROUND** ......................................................................................................................... 2

    A.    Procedural History ............................................................................................................ 2

    B.    Plaintiff Does Not Challenge Healthfirst's Written Policy................................................. 3

    C.    Plaintiff Obtained Conditional Certification Based on an Alleged *De Facto* Policy that He Was Directed to Work Off-the-Clock ...................................................................... 3

        1.    Plaintiff Alleges in the Amended Complaint that He Was Directed to Work Off-the-Clock ............................................................................................... 4

        2.    Plaintiff Testifies that He Was Directed to Work Off-the-Clock .......................... 4

        3.    Plaintiff's Declaration in Support of His Motion for Conditional Certification Asserts that He Was Directed to Work Off-the-Clock ........................................... 5

    D.    The Opt-in FEs' Admissions Demonstrate that They Are Not Similarly Situated to Plaintiff Because They Were Not Directed to Work Off-the-Clock................................... 5

        1.    Ms. Kaur's Deposition Establishes that She Was Not Directed to Work Off-the-Clock ........................................................................................................... 6

        2.    The Opt-in FEs Admit in Verified Interrogatory Responses that No One at Healthfirst Directed Them to Work Off-the-Clock ............................................... 6

**ARGUMENT**.................................................................................................................................7

**PLAINTIFF CANNOT MEET HIS BURDEN OF DEMONSTRATING THAT THE OPT-IN FES ARE SIMILARLY SITUATED TO HIM** ............................................................... 7

    A.    The Unlawful *De Facto* Policy Identified in the Amended Complaint Did Not Exist....... 9

    B.    Plaintiff's and the Opt-in FEs' Disparate Factual Employment Settings Preclude a Common Basis on which to Adjudicate Their Claims or the Defenses Thereto ................ 9

        1.    Disparate Factual and Employment Settings Support Decertification ................. 10

        2.    Individualized Defenses as to Each Opt-in FE Support Decertification............... 11

        3.    Fairness and Procedural Considerations Counsel Against Class-wide Treatment .............................................................................................................. 11

**CONCLUSION** ......................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Hinojos v. Home Depot, Inc.*,
   No. 2:06-CV-00108, 2006 WL 3712944 (D. Nev. Dec. 1, 2006) .......................................... 11

*Hinterberger v. Catholic Health Sys.*,
   299 F.R.D. 22 (W.D.N.Y. 2014) ........................................................................................ 8

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ............................................................................................... 8

*Ruiz v. Citibank, N.A.*,
   93 F. Supp. 3d 279 (S.D.N.Y. 2015) .................................................................................. 8

*Zivali v. AT&T Mobility, LLC*,
   784 F. Supp. 2d 456 (S.D.N.Y. 2011) .......................................................................... 8, 11

Defendant HF Management Services, LLC ("Healthfirst" or "Defendant") respectfully submits this memorandum of law in support of its motion to decertify Collective Action B.

## PRELIMINARY STATEMENT

The Court should decertify Collective Action B—comprised of current and former Healthfirst employees who worked as Facilitated Enrollers ("FEs")—because the undisputed evidence establishes that individuals who opted in to that collective action (the "Opt-in FEs") are not similarly situated to named Plaintiff Kanwarpreet Thind ("Plaintiff"). Plaintiff alleges in the Amended Complaint and in his sworn declaration in support of his motion for conditional certification that his Healthfirst supervisors "demanded," "required" and "instructed" him to work off-the-clock—*i.e.*, at a time that Healthfirst's automated timekeeping system was not recording his work hours—in violation of the Fair Labor Standards Act ("FLSA"). Plaintiff obtained conditional certification of Collective Action B based on his representation that Healthfirst subjected all FEs to the same unlawful policy of directing them to work off-the-clock. In fact, Plaintiff previously represented to this Court that "when not instructed to work off the clock, [FEs] [we]re required to clock in and out electronically at the beginning and end of their workday . . . ." (ECF No. 118 (Plaintiff's 9/17/15 letter to Court) at 2.)

The Opt-in FEs' sworn discovery responses, however, conclusively demonstrate that the alleged company-wide policy in violation of the FLSA did not exist. ***Approximately 70%*** of the Opt-in FEs stated in sworn interrogatory responses that they were never directed to work off-the-clock. Given these responses, Plaintiff has been forced to disavow the alleged FLSA violation on which he obtained conditional certification and acknowledge that it is no longer viable. (Declaration of Scott B. Klugman in Support of Defendant's Motion to Decertify Collective Action B ("Klugman Decl.") Ex. A (4/21/16 Tr.) at 19:16-20:13 (acknowledging that the case

could not continue based on the collective that was certified and stating that Collective Action B was conditionally certified "based on the person that we had. . . . And now [after opt-in discovery,] we have other information."); ECF No. 248 (Plaintiff's 4/15/16 pre-motion letter) at 2 (admitting that being "directed to work off the clock" is no longer "the defining hallmark of this collective.").)

Accordingly, the Court should decertify Collective Action B because (1) the Opt-in FEs' admissions demonstrate that the unlawful *de facto* policy alleged in the Amended Complaint did not exist; and (2) Plaintiff's and the Opt-in FEs' disparate factual and employment settings confirm that there is no common basis on which to adjudicate their claims or the defenses thereto on a representative basis.

## BACKGROUND

A.   **Procedural History**

Plaintiff Kanwarpreet Thind filed the Amended Complaint on behalf of two distinct putative groups of employees: (1) "Collective Action A" comprised of current and former Healthfirst Managers in the Facilitated Enrollment Department; and (2) "Collective Action B" comprised of current and former Healthfirst FEs. (Am. Compl. (ECF No. 19) ¶ 11.) In an Order dated July 31, 2015 (the "July 2015 Order"), the Court granted Plaintiff's motion to conditionally certify both collective actions. (ECF No. 55.) Collective Action A is not at issue in this motion.

Following the issuance of the July 2015 Order, Plaintiff sent Court-facilitated notice to 411 current and former FEs. Thereafter, approximately 123 individuals joined Collective Action B. (*See generally* Consent to Join Forms filed between ECF Nos. 64-232.) Only 70 of these individuals responded to Healthfirst's discovery requests. (*See generally* Klugman Decl. ¶ 2 (attaching, pursuant to the Court's direction, the interrogatory responses of the Opt-in FEs on a

compact disk (the "CD") in a folder entitled "Interrogatory Responses" (the "Opt-in FE Interrogatory Responses Folder").)

### B. Plaintiff Does Not Challenge Healthfirst's Written Policy

Plaintiff concedes that, pursuant to Healthfirst's written policy, FEs were paid overtime compensation.  (*See* Am. Compl. ¶ 2 (conceding that FEs were classified as non-exempt); Klugman Decl. Ex. B (Excerpts from Deposition of Plaintiff Kanwarpreet Thind ("Pl. Dep.")) 186:2-4 (same); *see also* Klugman Decl. Ex. C (Excerpts from Deposition of Healthfirst Corporate Representative Stephanie Kelly pursuant to Fed. R. Civ. P. 30(b)(6) ("Kelly Dep.") 93:25-94:4.)  Specifically, under Healthfirst's policy, FEs self-reported the hours that they worked using an automated timekeeping system known as "Ultipro."  (Klugman Decl. Ex. C (Kelly Dep.) 94:5-19; Klugman Decl. Ex. D (Healthfirst 2014 Employee Manual) at 28; *see also* Klugman Decl. Ex. B (Pl. Dep.) 186:2-9.)  Healthfirst's policy required that all FEs be compensated at the overtime rate for hours worked in excess of 40 each week.  (Klugman Decl. Ex. D (Healthfirst 2014 Employee Manual) at 27).)  Healthfirst's policies also prohibited FEs from working at a time that they were not clocked in to the Ultipro system.  (*Id.* at 28.)

### C. Plaintiff Obtained Conditional Certification Based on an Alleged *De Facto* Policy that He Was Directed to Work Off-the-Clock

Given Healthfirst's FLSA-compliant written policies, Plaintiff based the Collective Action B FLSA claim on an alleged *de facto* policy deviation.  While, as shown below, Plaintiff altered his allegations as the evidence obtained in discovery refuted them, he obtained conditional certification of Collective Action B based on his allegation that he and all other FEs were directed to work off-the-clock.

1.     *Plaintiff Alleges in the Amended Complaint that He Was Directed to Work Off-the-Clock*

Plaintiff was employed as a Healthfirst FE from August 24, 2009 until January 25, 2012. (Am. Compl. ¶ 32.)[1]  During that time, the Amended Complaint alleges that Healthfirst "required" Plaintiff to work a fixed schedule seven days of the week that included at least 18 hours of off-the-clock, unpaid overtime work each week.  (Am. Compl. ¶¶ 33-37 (alleging that Plaintiff was required to work at least from 8:30 a.m. through 6:30 p.m. each weekday and for four hours on both weekend days each week).)  The Amended Complaint further alleges that:

> Defendant required Plaintiff to punch out after eight hours of work on the weekdays, but then demanded that he continue working without receiving any compensation for the additional hours.  On the weekends, Defendant required Plaintiff to work without punching in at all, meaning that the Plaintiff did not receive any compensation for those hours worked.

(*Id.* ¶ 36.)  The Amended Complaint also alleges that all other FEs are similarly-situated to Plaintiff in that they also "were required to work in excess of forty hours each workweek" and "were not paid the required [overtime rate]."  (*Id.* ¶ 12.)

2.     *Plaintiff Testifies that He Was Directed to Work Off-the-Clock*

Plaintiff admitted at his deposition that a number of the Amended Complaint's allegations concerning his off-the-clock work were "false," including, but not limited to: (1) that he worked seven days per week every week (Klugman Decl. Ex. B (Pl. Dep.) 296:15-297:8); (2) that he worked a fixed, off-the-clock schedule (*id.* 298:4-298:19); and (3) that he did not receive any overtime pay (*id.* 301:18-302:12).[2]  In fact, documentary evidence, including evidence that was produced by Plaintiff, reflects that he regularly received overtime pay when

---

[1]  The Amended Complaint further alleges that Plaintiff worked as a Healthfirst Manager from January 25, 2012, until the end of his employment on August 21, 2014.  (Am. Compl. ¶¶ 2, 38.)

[2]  The paragraph numbers referred to in Plaintiff's testimony are from the original Complaint.  The Amended Complaint repeats these same allegations.  (*Compare* Compl. ¶¶ 34, 37 and 38 *with* Am. Compl. ¶¶ 33, 36 and 37.)

4

he worked as an FE. (Klugman Decl. Ex. E (excerpts of Plaintiff's pay records).) Despite the false allegations, Plaintiff still maintained at his deposition that he was directed to work off-the-clock and that, when he did so, he was not paid for his work. (*See* Klugman Decl. Ex. B (Pl. Dep.) 280:5-21 (testifying that as an FE, he was "directed to work off the clock" by his Manager, Usha Rani, and her supervisor, Ana Martinez).)

> 3. *Plaintiff's Declaration in Support of His Motion for Conditional Certification Asserts that He Was Directed to Work Off-the-Clock*

After his deposition, Plaintiff filed his motion for conditional certification (ECF Nos. 38-40) and submitted a sworn declaration in support of that motion. (ECF No. 46-2.) Plaintiff's declaration as to his off-the-clock work mirrored his prior deposition testimony. Specifically, Plaintiff averred that: (1) "[o]n several occasions" his Manager, Usha Rani, "instructed" him to "'punch out'" on weekdays after eight hours of work and "then continue working off the clock" (*id.* ¶ 6); (2) he "often" was required work four hours or longer on weekend days and that Ms. Rani "instructed" him not to "punch in or out when [he] worked weekends" (*id.* ¶ 7); and (3) he was not paid for his off-the-clock work. (*Id.* ¶¶ 6-7.) Plaintiff obtained conditional certification based on his contention that other FEs were similarly situated to him. (*See* ECF No. 46-2 ¶ 19.)

**D.     The Opt-in FEs' Admissions Demonstrate that They Are Not Similarly Situated to Plaintiff Because They Were Not Directed to Work Off-the-Clock**

The Opt-in FEs' admissions conclusively demonstrate that they are not similarly-situated to Plaintiff. Healthfirst deposed Navjot Kaur—the only Opt-in FE who joined the case prior to the July 2015 Order—and sent basic interrogatories to the other 123 Opt-in FEs. Ms. Kaur's testimony and the Opt-in FEs' discovery responses establish that there was no common policy to direct the Opt-in FEs to work off-the-clock and a great majority of them were never directed to do so.

1. *Ms. Kaur's Deposition Establishes that She Was Not Directed to Work Off-the-Clock*

Ms. Kaur's deposition testimony demonstrates that she is not similarly-situated to Plaintiff. Ms. Kaur testified that no one at Healthfirst directed her to work off-the-clock, despite the fact that for a portion of her employment she reported to Usha Rani, the same Manager who Plaintiff alleges directed his off-the-clock work. (Klugman Decl. Ex. F (Excerpts from Deposition of Opt-in Navjot Kaur ("Kaur Dep.")) at 24:5-6, 169-75.) Ms. Kaur further testified that, with one exception, the only tasks she performed after concluding her work day and punching out involved sporadic, brief conversations of five minutes or less with prospective enrollees as she was leaving work and that no one at Healthfirst knew of such conversations. (*Id.* at 172:18-173:22, 174:24-175:17.)[3]

2. *The Opt-in FEs Admit in Verified Interrogatory Responses that No One at Healthfirst Directed Them to Work Off-the-Clock*

Healthfirst issued four straightforward interrogatories to the Opt-in FEs, including the following:

> **INTERROGATORY NO. 2:** For each Opt-in Plaintiff in Collective Action B, identify each person who, at any time, directed him/her to work off-the-clock, *i.e.* at a time when he/she was not punched in or clocked in.

(*See generally* CD, Opt-in FE Interrogatory Responses Folder.) Only a handful of Opt-in FEs responded that they were directed to work off-the-clock.

As noted above, 70 Opt-in FEs responded to Healthfirst's interrogatories. Of those that did respond:

- 48 Opt-in FEs—nearly 70%—stated "None," "No one," or "NA" (Klugman Decl. Ex. G (Summary Chart of Opt-in FE Interrogatory Responses) at § I.A);

---

[3] As to the one exception, Ms. Kaur testified that she met a client at the client's home at 7:30 a.m. to accommodate this client without telling her supervisor or anyone else at Healthfirst. (*Id.* at 173:21-174:21.)

6

- Five Opt-in FEs replied without identifying any supervisors who directed them to work off-the-clock, but included qualifications suggesting that they were encouraged to work off-the clock (*id.* at § I.B);

- 16 Opt-in FEs identified one or more Healthfirst employees who allegedly directed them to work off-the-clock (*id* at § I.C); and

- One Opt-in FE stated that he "d[id] not recall" (*id.* at § I.D).

Notably, even Opt-in FEs who worked for the same supervisor provided disparate responses to Interrogatory No. 2, demonstrating that FEs on the same FE team are not similarly-situated with respect to the FLSA violation alleged in this case. (*See, e.g.*, Klugman Decl. Ex. G (Summary Chart of Opt-in FE Interrogatory Responses) at § II (listing multiple examples of Opt-in FEs providing conflicting responses about whether a particular manager directed them to work off-the-clock.).)

Moreover, the discovery responses and the documentary evidence demonstrate other disparities in the Opt-in FEs' factual and employment settings. The Opt-in FEs' interrogatory responses show that they reported to dozens of different supervisors and worked at nearly 100 different locations throughout New York City and Long Island. (*See generally* CD, Opt-in FE Interrogatory Responses Folder.) In addition, pay records show that nearly all of the Opt-in FEs were paid for varying amounts of overtime work during their employment at Healthfirst, including, in some cases, for over 100 hours per year. (*See* Klugman Decl. Ex. H (Selection of Yearly Pay Summaries).)

## ARGUMENT

### PLAINTIFF CANNOT MEET HIS BURDEN OF DEMONSTRATING THAT THE OPT-IN FES ARE SIMILARLY SITUATED TO HIM

The Court should decertify Collective Action B because the Opt-in FEs' admissions demonstrate that the only FLSA-noncompliant policy alleged in the Amended Complaint did not exist. Unlike the lenient standard applicable to an initial motion for conditional certification, on

7

a motion for decertification, a plaintiff must satisfy a "more stringent standard of proof." *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) (internal quotation marks omitted). To defeat a motion for decertification, a plaintiff bears the burden of establishing that "the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (internal quotation marks omitted); *Zivali*, 784 F. Supp. 2d at 460. In making this determination, courts typically consider three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against collective action treatment. *Zivali*, 784 F. Supp. 2d at 460.

A collective action based on a *de facto* policy of requiring employees to work off-the-clock should be decertified unless the plaintiff demonstrates that the alleged *de facto* policy is "sufficiently uniform and pervasive as to warrant class treatment." *Zivali*, 784 F. Supp. 2d at 463; *see also Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 299-300 (S.D.N.Y. 2015) (decertifying a FLSA class because plaintiffs failed to show "a common policy that operated to common effect"); *Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 55 (W.D.N.Y. 2014) (decertifying collective action because plaintiffs "have not identified any system-wide policy or practice that was applied uniformly to each of the four name Plaintiffs, much less the numerous opt-in plaintiffs and thousands of putative plaintiffs.").

The Court should decertify Collective Action B on the present record because: (1) the Opt-in FEs' admissions demonstrate that the unlawful *de facto* policy identified in the Amended Complaint did not exist; and (2) Plaintiff's and the Opt-in FEs' disparate factual and employment

settings confirm that there is no common basis on which to adjudicate their claims or the defenses thereto.

### A. The Unlawful *De Facto* Policy Identified in the Amended Complaint Did Not Exist

The evidence refutes Plaintiff's claim that Healthfirst had a common, unlawful policy of directing FEs to work off-the-clock. As detailed above, 70% of the Opt-in FEs have sworn that they were never directed to work off-the-clock, and Ms. Kaur—the only Opt-in FE who has been deposed—similarly testified that she was never directed to work off-the-clock. (*See* Klugman Decl. Ex. G (Summary Chart of Opt-in FE Interrogatory Responses) at § I.A, Ex. F (Kaur Dep.) 169-75.) As a result of these admissions, Plaintiff has disavowed the allegations on which he obtained conditional certification of Collective Action B and no longer asserts that Healthfirst had a company-wide policy of directing FEs to work off-the-clock. (Klugman Decl. Ex. A (4/21/16 Tr.) at 19:16-20:13 (acknowledging that the case could not continue based on the collective that was certified and stating that Collective Action B was conditionally certified "based on the person that we had. . . . And now [after opt-in discovery,] we have other information."); *see* ECF No. 248 at 2 (admitting that "being expressly directed to work off the clock" is no longer "the defining hallmark of this collective.").) Accordingly, given that the only unlawful policy identified in the Amended Complaint did not exist, the Court should decertify Collective Action B.

### B. Plaintiff's and the Opt-in FEs' Disparate Factual Employment Settings Preclude a Common Basis on which to Adjudicate Their Claims or the Defenses Thereto

The three factors that courts typically consider on a decertification motion also support decertification.

1.     *Disparate Factual and Employment Settings Support Decertification*

The Opt-in FEs' disparate factual and employment settings weigh heavily in favor of decertification. Healthfirst's FEs were field-based employees who primarily worked away from Healthfirst offices at various locations in the community that included hospitals, doctor's offices, other small businesses and prospective enrollees' homes. (Klugman Decl. Ex. C (Kelly Dep.) 87:1-17.) In fact, the Opt-in FEs' interrogatory responses demonstrate that they were supervised by over 50 different managers at nearly 100 locations scattered throughout New York City and Long Island. (*See generally* CD, Opt-in FE Interrogatory Responses Folder). The FEs' pay records also reflect significant disparities in the frequency and amount of overtime pay received by the Opt-in FEs. While nearly every Opt-in FE received overtime pay, the amount of paid overtime varied widely, from under ten hours to over 100 hours per year. (*See* Klugman Decl. Ex. H (Selection of Yearly Pay Summaries).)

In addition, Plaintiff's, Ms. Kaur's and the Opt-in FEs' sworn statements demonstrate that there are factual differences even within the same FE team. For example, both Plaintiff and Ms. Kaur reported to Usha Rani. (ECF No. 46-2 (Plaintiff's Declaration) ¶ 6; Klugman Decl. Ex. F (Kaur Dep.) 24:5-6.) But whereas Plaintiff claims that Ms. Rani directed him to work off-the-clock, Ms. Kaur testified that Ms. Rani never directed her to work off-the-clock. (Klugman Decl. Ex. F (Kaur Dep.) 174:24-175:17.) Similarly, the Opt-in FEs' responses to Interrogatory No. 2 demonstrate multiple factual disparities among individuals who reported to the same Manager concerning whether they were directed to work off-the-clock. (*See* Klugman Decl. Ex. G (Summary Chart of Opt-in FE Interrogatory Responses) at § II (listing multiple examples of Opt-in FEs providing conflicting responses about whether a particular manager directed them to work off-the-clock).)

Accordingly, the disparities in the factual and employment settings of Plaintiff and the Opt-in FEs further demonstrate that Collective Action B's claims are not susceptible to collective proof, but would require resolution through a series of individualized inquires and mini-trials.

### 2. *Individualized Defenses as to Each Opt-in FE Support Decertification*

Plaintiff's and the Opt-in FEs' claims are subject to individualized defenses which further support decertification of Collective Action B. These defenses include, but are not limited to, whether, when and how often each Opt-in FE was actually directed to work off-the-clock, whether the alleged off-the-clock work constituted unpaid overtime or non-compensable gap time, and whether his or her claim (or any portion thereof) is barred by the applicable statute of limitations. Given the absence of the alleged company-wide policy, Healthfirst's defenses will turn on the individualized employment circumstances of each Opt-in FE.

Accordingly, this factor also weighs in favor of decertifying Collective Action B.

### 3. *Fairness and Procedural Considerations Counsel Against Class-wide Treatment*

Adjudicating the Opt-in FEs' FLSA claims as a collective action would be inefficient and manifestly unfair to Healthfirst. As reflected above, there are no common issues of fact relevant to Plaintiff's allegations, and resolution of these fact-specific issues would require a mini-trial as to each Opt-in FE. "'Such a result is the antithesis of collective action treatment and would overwhelm the judicial system and eliminate any judicial efficiency that might be gained through a collective approach.'" *Zivali*, 784 F. Supp. 2d at 469 (quoting *Hinojos v. Home Depot, Inc.*, No. 2:06-CV-00108, 2006 WL 3712944, at *3 (D. Nev. Dec. 1, 2006)).

## CONCLUSION

For the foregoing reasons, the Court should decertify Collective Action B, dismiss the claims of the Opt-in FEs and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        May 12, 2016

By:   s/ Scott B. Klugman
      Scott B. Klugman
      Seth L. Levine
      Aaron I. Karp
**LEVINE LEE LLP**
666 Fifth Avenue
New York, New York 10103
Telephone:  (212) 223-4400
Facsimile:  (212) 223-4425
sklugman@levinelee.com
slevine@levinelee.com
akarp@levinelee.com

Andrew P. Marks
**LITTLER MENDELSON P.C.**
900 Third Avenue
New York, New York 10022
Telephone:  (212) 583-9600
Facsimile:  (212) 832-2719
amarks@littler.com

*Attorneys for Defendant*
*HF Management Services, LLC*