## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KANWARPREET THIND, on behalf of himself and all other similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>HF MANAGEMENT SERVICES, LLC, d/b/a HEALTHFIRST,<br><br>     Defendant. | Civil Docket No. 14-cv-09539-LGS<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DECERTIFY COLLECTIVE ACTION B AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR LEAVE TO AMEND COMPLAINT AND GRANT FINAL CERTIFICATION OF THE NEWLY REDEFINED COLLECTIVE ACTION B PURSUANT TO 29 U.S.C. § 216(b)**

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 3

I.      THE COURT SHOULD GRANT HEALTHFIRST'S MOTION TO DECERTIFY
        COLLECTIVE ACTION B ............................................................................................. 3

II.     THE COURT SHOULD DENY PLAINTIFF'S CROSS-MOTION FOR LEAVE TO
        AMEND THE FIRST AMENDED COMPLAINT ........................................................... 4

        A.      The Court Should Deny Plaintiff's Motion to Replead Collective Action B on
                Futility Grounds ................................................................................................... 6

                1.      The Opt-in FEs' Interrogatory Responses Demonstrate that the Proposed
                        Subcollectives Are Not Susceptible to Collective Proof ............................ 7

                2.      Plaintiff Cannot Establish Healthfirst's Knowledge of the FEs' Off-the-
                        Clock Work through Collective Proof ........................................................ 9

                3.      Plaintiff Cannot Establish that Healthfirst's Lawful Policies Uniformly
                        Required FEs to Work Off-the-Clock ........................................................ 12

        B.      The Court Should Deny Leave to Amend Because Plaintiff Has Plead Himself
                Out of the Proposed Subcollectives and Cannot Represent Them ....................... 14

        C.      Plaintiff's Proposed Second Amended Complaint is Filed in Bad Faith .............. 15

                1.      Plaintiff Knowingly Includes Allegations that He Previously
                        Disavowed in the Proposed Second Amended Complaint ........................ 16

                2.      The Proposed Second Amended Complaint Adds New Allegations that
                        Are Directly Contradicted by Plaintiff's Deposition Testimony and Other
                        Evidence ................................................................................................... 19

III.    THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR FINAL
        CERTIFICATION OF THE "NEWLY REDEFINED COLLECTIVE ACTION B" ...... 20

CONCLUSION ....................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Alonso v. Uncle Jack's Steakhouse, Inc.*,
No. 08-CV-07813 (DAB), 2011 WL 4389636 (S.D.N.Y. Sept. 21, 2011) .............................. 21

*Amador v. Morgan Stanley & Co. LLC*,
No. 11-CV-04326 (RJS), 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) ....................................... 9

*Bijoux v. Amerigroup N.Y., LLC*,
No. 14-CV-03891 (RJD) (VVP), 2015 WL 4505835 (E.D.N.Y. July 23, 2015) ...................... 9

*Billy Baxter, Inc. v. Coca-Cola Co.*,
47 F.R.D. 345 (S.D.N.Y. 1969) ................................................................................................ 16

*Brewer v. Gen. Nutrition Corp.*,
No. 11-CV-03587 (YGR), 2014 WL 5877695 (N.D. Cal. Nov. 12, 2014) .............................. 23

*Chao v. Gotham Registry, Inc.*,
514 F.3d 280 (2d Cir. 2008) ...................................................................................................... 9

*Cornell v. World Wide Bus. Servs. Corp.*,
No. 2:14-CV-00027, 2015 WL 6662919 (S.D. Ohio Nov. 2, 2015) ........................................ 23

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000) ........................................................................................................ 6

*Diaz v. S & H Bondi's Dep't Store*,
No. 10-CV-07676 (PGG), 2012 WL 137460 (S.D.N.Y. Jan. 18, 2012) .................................. 14

*East Tex. Motor Freight Sys. v. Rodriguez*,
431 U.S. 395 (1977) .................................................................................................................. 14

*Faria v. Allstate Merchant Serv., LLC*,
No. 09-CV-07444 (JSR), 2010 WL 1541576 (S.D.N.Y. Apr. 13, 2010) ................................. 14

*In re GPC Biotech AG Secs. Litig.*,
No. 07-CV-06728 (DC), 2009 WL 5125130 (S.D.N.Y. Dec. 29, 2009) ................................. 15

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015) ......................................................................................... 6

*Jenkins v. TJX Cos. Inc.*,
853 F. Supp. 2d 317 (E.D.N.Y. 2012) ...................................................................................... 14

*Joza v. WW JFK LLC*,
No. 07-CV-04153 (ENV), 2010 WL 3619551 (E.D.N.Y. Sept. 10, 2010) .............................. 5

*Knife Rights, Inc. v. Vance*,
   802 F.3d 377 (2d Cir. 2015) ............................................................................. 6

*McGlone v. Contract Callers, Inc.*,
   49 F. Supp. 3d 364 (S.D.N.Y. 2014) ................................................................ 21

*Morris v. Lettire Const., Corp.*,
   896 F. Supp. 2d 265 (S.D.N.Y. 2012) ............................................................. 14

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ........................................................................ 4, 20

*Parker v. Columbia Pictures Indus.*,
   204 F.3d 326 (2d Cir. 2000) ............................................................................. 6

*Pefanis v. Westway Diner, Inc.*,
   No. 08-CV-00002 (DLC), 2010 WL 3564426 (S.D.N.Y. Sept. 7, 2010) .............. 22

*Richardson v. Wells Fargo Bank, N.A.*,
   No. 11-CV-00738 (NFA), 2012 WL 334038 (S.D. Tex. Feb. 2, 2012) .................. 9

*Ruiz v. Citibank, N.A.*,
   93 F. Supp. 3d 279 (S.D.N.Y. 2015) ........................................................ 5, 20, 21

*Scott v. N.Y.C. Dep't of Corr.*,
   445 F. App'x 389 (2d Cir. 2011) ....................................................................... 6

*Tanner v. Tpusa, Inc.*,
   No. 1:12-CV-00033 (WLS), 2015 WL 6940118 (M.D. Ga. Nov. 9, 2015) ............ 23

*US Airways, Inc. v. Sabre Holdings Corp.*,
   No. 11-CV-02725 (LGS), 2015 WL 3826348 (S.D.N.Y. June 19, 2015) ............... 6

*Zivali v. AT&T Mobility, LLC*,
   784 F. Supp. 2d 456 (S.D.N.Y. 2011) ...................................................... 3, 7, 20, 23

**Statutes**

29 U.S.C. § 216(b) ................................................................................................ 1

**Rules**

Federal Rule of Civil Procedure 11 ................................................................... 3, 16

Federal Rule of Civil Procedure 16(b) .................................................................. 6

PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

Defendant HF Management Services, LLC ("Healthfirst" or "Defendant") respectfully submits this reply memorandum of law in further support of its motion to decertify Collective Action B ("Healthfirst Br.") and in opposition to Plaintiff's cross-motion to amend the First Amended Complaint and for final certification of the newly redefined Collective Action B pursuant to 29 U.S.C. § 216(b) ("Pl. Br.").[1]

## PRELIMINARY STATEMENT

Plaintiff's opposition brief and cross-motion to amend demonstrate that all parties agree that Collective Action B must be decertified because it is based on an alleged common policy to violate the FLSA that did not exist.  The Opt-in FEs' interrogatory responses refute the allegation underlying the conditional certification of Collective Action B, *i.e.*, that Plaintiff and all other FEs were directed to work off-the-clock.  Thus, Plaintiff cannot and does not seriously oppose Healthfirst's motion to decertify Collective Action B as it is currently defined.  (*See* Pl. Br. at 24 ("Plaintiff does not dispute that opt-in interrogatories provided in this matter ***necessarily warrant an amended definition of Collective B***.") (emphasis added).)  (*See infra* Section I.)

Plaintiff's attempt to allege new FE subclasses in his proposed second amended complaint is futile because, as with the current Collective Action B, the record evidence, including Plaintiff's and the Opt-in Plaintiffs' admissions, refutes any claim that the newly alleged FLSA violations were sufficiently uniform or pervasive such that they are susceptible to collective proof.  Plaintiff's proposed second amended complaint seeks to replead Collective B as two subcollectives based on two alleged Healthfirst policies:  (1) Healthfirst's alleged setting of productivity goals; and (2) Healthfirst's budgetary restrictions concerning containment of overtime costs.  Plaintiff does not contend that either of these policies violates the FLSA; nor

---

[1]    Capitalized terms used and not defined herein have the same meaning as in Healthfirst's Memorandum of Law in Support of Healthfirst's Motion to Decertify Collective Action B (ECF No. 255).

could he, as it is well-settled that they do not.  Instead, Plaintiff argues that the FEs in the proposed subcollectives are similarly situated because these lawful policies forced all FEs to work off-the-clock to avoid disciplinary action for failure to meet sales goals.  However, the resolution of the FEs' FLSA claims will turn on highly-individualized inquiries that would eliminate any efficiency to be gained by proceeding on a collective basis.  (*See infra* Section II.A.)

Furthermore, Plaintiff pleads himself out of both subcollectives in the proposed second amended complaint and therefore cannot serve as a representative plaintiff for the Opt-in FEs. Plaintiff's own admissions demonstrate that there is no factual nexus between his FLSA claim and those of the newly proposed subcollectives because Plaintiff did not need to work off-the-clock to meet his sales goals.  Rather, he testified that he was directed to work off-the-clock because it would make it more likely that he would be promoted.  As a result, the Court should deny Plaintiff's motion as futile.  (*See infra* Section II.B.)

The Court should also deny Plaintiff's motion for leave to amend based on a finding that Plaintiff acted in bad faith.  Over a year ago, Plaintiff testified that multiple allegations in the Complaint and First Amended Complaint (collectively, the "Prior Pleadings") were "false."  In fact, Plaintiff previously acknowledged this testimony to this Court in connection with his conditional certification motion.  Remarkably, despite this acknowledgement and Plaintiff's unambiguous testimony, Plaintiff repeated the identical false allegations in his proposed second amended complaint.  These false allegations go to the core of Plaintiff's claims, and relate to the amount and frequency of his overtime work and his compensation for it.  The proposed second amended complaint also includes new allegations that are directly contradicted by Plaintiff's deposition testimony.  While the Court previously excused Plaintiff's failure to correct the false

statements in the Prior Pleadings, the Court should not permit Plaintiff to file yet another false pleading that does not conform to the standards set forth in Federal Rule of Civil Procedure ("Rule") 11.  (*See infra* Section II.C.)

Finally, even if the Court grants Plaintiff's motion for leave to amend, it should deny Plaintiff's motion for final certification of the proposed second amended complaint's newly alleged FE Collectives.  Plaintiff has failed to meet his burden of proving that the FEs in each newly proposed subcollective are similarly situated and that their claims are subject to collective proof.  Rather, the evidence demonstrates not only that the newly alleged policy is neither uniform nor pervasive, but also that wide variances among the Opt-in FEs' factual and employment circumstances will require the individual adjudication of each FE's claims.  (*See infra* Section III.)

## ARGUMENT

### I.    THE COURT SHOULD GRANT HEALTHFIRST'S MOTION TO DECERTIFY COLLECTIVE ACTION B

The Court should decertify Collective Action B because Plaintiff does not dispute that the alleged unlawful *de facto* policy identified in the First Amended Complaint did not exist.  This concession alone should result in decertification of Collective Action B.

As demonstrated in Healthfirst's opening brief and not disputed by Plaintiff, a collective action based on a *de facto* policy should be decertified unless the plaintiff demonstrates that the alleged *de facto* policy is "'sufficiently uniform and pervasive as to warrant class treatment.'" (Healthfirst Br. at 8 (quoting *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 463 (S.D.N.Y. 2011) and collecting cases).)  There is no dispute that the *de facto* policy alleged in the First Amended Complaint and on which Plaintiff obtained conditional certification of Collective Action B—that Plaintiff and all other FEs were directed to work off-the-clock—was neither

uniform nor pervasive.  As Plaintiff concedes, the "opt-in interrogatories provided in this matter *necessarily warrant an amended definition of Collective B*."  (Pl. Br. at 24 (emphasis added).)  Plaintiff made this same acknowledgement to the Court in his pre-motion letter and at the pre-motion conference.  (ECF No. 248 at 2 (admitting that "being expressly directed to work off the clock" is no longer "the defining hallmark of this collective."); (Klugman Decl. Ex. A (4/21/16 Tr.) at 19:16-20:13 (acknowledging that the case could not continue based on the collective that was certified).)

Based on this concession, the Court should reject Plaintiff's assertion that decertification of Collective Action B is premature.  While a decertification motion is typically addressed after the close of discovery, the FLSA itself does not require this procedure.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) (noting that the two-stage procedure used by the districts in the Second Circuit is "not required by the terms of FLSA or the Supreme Court's cases").  Rather, the Second Circuit suggested that district courts should adopt a "sensible" approach in endorsing the use of the standard two-stage procedure in the typical case.  *Id* at 555.  Given that there is no dispute that the *de facto* policy alleged in the First Amended Complaint did not exist, it would be inefficient to delay inevitable decertification until the close of discovery.  Accordingly, the Court should decertify Collective Action B.

## II.   THE COURT SHOULD DENY PLAINTIFF'S CROSS-MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT

The Court should deny Plaintiff's cross-motion to amend because Plaintiff's and the Opt-in Plaintiffs' admissions refute the proposed second amended complaint's new theory and demonstrate that the proposed subcollectives are not susceptible to collective proof.  Plaintiff's proposed second amended complaint divides Collective Action B into two newly defined subcollectives, identified as Collective Actions B-1 and B-2.  (Proposed Second Am. Compl.

¶ 11.)  Plaintiff argues that all FEs are similarly situated to one of the subcollectives based on two alleged policies:  (1) Healthfirst's alleged setting of productivity goals; and (2) Healthfirst's budgetary restrictions concerning containment of overtime costs.  (*Id.* ¶¶ 2, 11.)[2]  But neither the establishment of productivity requirements nor the containment of overtime work constitute violations of the FLSA.  *See, e.g.*, *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 289-90 (S.D.N.Y. 2015).  As this Court has stated, "[s]etting production targets is a perfectly acceptable employment practice, as are 'customary management admonitions to supervisors to watch and maintain control of work assignments in order to avoid unnecessary overtime.'"  *Id.* (quoting *Joza v. WW JFK LLC*, No. 07-CV-04153 (ENV), 2010 WL 3619551, at *2 (E.D.N.Y. Sept. 10, 2010)).

Plaintiff does not dispute the lawfulness of Healthfirst's productivity requirement or alleged attempt to contain overtime work.  Instead, he argues that Healthfirst's lawful business goals forced Plaintiff, and all other FEs, to voluntarily work off-the-clock in violation of Healthfirst's written policies to avoid being disciplined for failing to meet production standards.  (*See* Pl. Br. at 1.)  But as with the now-discredited allegations on which Plaintiff originally obtained conditional certification, Plaintiff's and the Opt-in Plaintiffs' admissions refute this new theory and demonstrate that the proposed subcollectives are not susceptible to collective proof.  Plaintiff's motion for leave to replead Collective Action B should therefore be denied as futile.

The Court also should deny Plaintiff's motion on futility grounds because Plaintiff testified that his off-the-clock work was unrelated to meeting Healthfirst's production requirements, which he consistently exceeded, and he therefore cannot establish a factual nexus between his claim and those of the proposed subcollectives.  In addition, the Court should deny

---

[2]   The proposed second amended complaint does not allege that Healthfirst had any budgetary restrictions relating to its willingness to authorize overtime work.  Plaintiff makes this allegation for the first time in his brief in support of his motion for leave to amend.  (*See* Pl. Br. at 1.)

Plaintiff's motion based on his bad faith because the proposed second amended complaint contains the same false allegations from the Prior Pleadings that have been the subject of several motions before this Court, as well as new allegations that are directly contradicted by Plaintiff's deposition testimony.

### A.      The Court Should Deny Plaintiff's Motion to Replead Collective Action B on Futility Grounds

The Court should deny Plaintiff's motion to file his proposed second amended complaint on futility grounds because Plaintiff's and the Opt-in Plaintiffs' admissions demonstrate that, like Collective Action B, the proposed subcollectives are not susceptible to collective proof. Although liberally granted, courts may properly deny leave to amend under Federal Rule of Civil Procedure 15(a) if doing so would be futile.  *See Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015).[3]  "Where the problems with a claim are substantive rather than the result of an inadequately or inartfully pleaded complaint, an opportunity to replead would be futile and should be denied."  *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 548-49 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Plaintiff seeks leave to file a second amended complaint for the purpose of repleading Collective Action B as two new subcollectives of FEs.  As before, Plaintiff does not dispute that

---

[3]    Plaintiff makes multiple assertions that he "promptly" and "timely" moved for leave to amend, satisfying the standard established in Rule 16(b).  (Pl. Br. at 2, 10, 12, 14.)  This assertion, however, is belied by the facts.  Plaintiff acknowledges that because he seeks leave to amend after the Court-ordered deadline to do so, the "good cause" standard contained in Rule 16(b) applies.  (*Id.* at 6-7); *Scott v. N.Y.C. Dep't of Corr.*, 445 F. App'x 389, 391 (2d Cir. 2011); *US Airways, Inc. v. Sabre Holdings Corp.*, No. 11-CV-02725 (LGS), 2015 WL 3826348, at *1 (S.D.N.Y. June 19, 2015).  "[A] finding of 'good cause' depends on the diligence of the moving party."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  Here, it should have been apparent to Plaintiff as of the first production of the Opt-in FEs' responses to Healthfirst's interrogatories in November 2015 that the representation on which Plaintiff obtained conditional certification—that *all* FEs were directed to work off-the-clock—was false.  (*See* CD, Opt-in FE Interrogatory Responses Folder.)  Yet, Plaintiff did not raise this issue to the Court until April, 15, 2016, and only then in response to Healthfirst's pre-motion letter for leave to move to decertify.  (*See* ECF No. 248.)  Plaintiff therefore cannot meet the good cause standard, and the Court should also deny Plaintiff's motion pursuant to Rule 16(b).

Healthfirst's formal, written policies that applied to FEs were FLSA compliant.  (*See* Proposed Second Am. Compl. ¶ 2; *see also* Healthfirst Br. at 3.)  These policies, *inter alia*, (1) required that FEs be paid a premium for any overtime work, even if not authorized; (2) required FEs to use an automated timekeeping system to accurately record the time that they worked; and (3) prohibited FEs from working at a time that they were not clocked in.  (*See* Klugman Decl. Ex. D (Healthfirst Employee Manual) at 27-28.)  Thus, Plaintiff cannot obtain certification of Collective Actions B-1 and B-2 unless he identifies an unlawful *de facto* policy that is "sufficiently uniform and pervasive as to warrant class treatment."  *Zivali*, 784 F. Supp. 2d at 463 (granting decertification where, *inter alia*, plaintiffs "failed to show that [the employers'] lawful policies are consistently violated in practice such that it would be possible to generalize" across the opt-in plaintiffs).

Plaintiff fails to meet this standard for multiple reasons.  First, the Opt-in FEs' interrogatory responses demonstrate that the FLSA claims of the proposed subcollectives are not susceptible to resolution through collective proof.  Second, Plaintiff cannot establish Healthfirst's knowledge that FEs commonly worked off-the-clock through collective proof.  Third, Plaintiff cannot establish that Healthfirst's FEs uniformly were unable to meet their sales goals without working off-the-clock.

1.   *The Opt-in FEs' Interrogatory Responses Demonstrate that the Proposed Subcollectives Are Not Susceptible to Collective Proof*

The Court should deny Plaintiff's motion for leave to amend for the same reason that it should decertify current Collective Action B:  the Opt-in FEs' interrogatory responses refute the factual basis underlying his collective action allegations.  As detailed in Healthfirst's opening brief, Healthfirst propounded an interrogatory requesting that each Opt-in Plaintiff indicate who "directed" her/him to work off-the-clock.  (*See* Healthfirst Br. at 6.)  Forty-eight Opt-in FEs—

approximately 70% of the Opt-in FEs who responded to Healthfirst's interrogatories—categorically averred that they were not directed to work off-the-clock. (*Id*. at 6-7; Klugman Decl. Ex. G (Summary Chart of Opt-in FE Interrogatory Responses) § I.A.). These responses demonstrate that the great majority of FEs did not receive any direction from Healthfirst, including a direction regarding their sales goals, that caused them to work off-the-clock.

Nor can Plaintiff avoid the plain import of these answers to Healthfirst's straightforward interrogatory by claiming that the interrogatory only called for responses where an FE received "express instruction from managers" to work off-the-clock. (*See* Proposed Second Am. Compl. ¶ 11.) Nothing in the interrogatory contains such a limitation, and, based on the responses provided to Healthfirst, it is clear that the Opt-in FEs and their counsel did not understand this interrogatory to be so limited. Specifically, five of the Opt-in FEs who responded to Healthfirst's interrogatories stated, in substance, that certain individuals directed them to meet their sales goals and that this direction required them to work off-the-clock. (*See* Klugman Decl. Ex. G at § I.B; CD, Opt-in FE Interrogatory Responses Folder.) Given that all of the Opt-in FEs share the same counsel as Plaintiff, Plaintiff cannot now claim that the interrogatory responses do not bear on the newly alleged policies or demonstrate that the great majority of Opt-in FEs did not receive an instruction, including an instruction regarding their sales goals, that caused them to work off-the-clock. As a result, the Court should conclude that the Opt-in FEs' interrogatory responses refute Plaintiff's new theory underlying his collective action allegations and demonstrate that the claims of the proposed subcollectives are not susceptible to collective proof.

2.    *Plaintiff Cannot Establish Healthfirst's Knowledge of the FEs' Off-the-Clock Work through Collective Proof*

Plaintiff cannot proceed collectively based on his new theory because he cannot establish that Healthfirst had knowledge of the FEs' alleged off-the-clock work through collective proof. To establish an FLSA violation, Plaintiff must establish that Healthfirst had actual or imputed knowledge that employees worked overtime for which they were not compensated.  *See Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008).   Given Healthfirst's written policy prohibiting FEs from working off-the-clock, Healthfirst is not legally responsible for an FE's unilateral decision to violate its policy unless Plaintiff establishes that Healthfirst had knowledge of this off-the-clock work, and Plaintiff cannot proceed collectively unless he can make this showing on a classwide basis.[4]

As demonstrated above, only a handful of FEs claim that they were directed to work off-the-clock.  As a result of these admissions, Plaintiff changes his theory in the proposed second amended complaint, alleging now that Healthfirst was aware that FEs commonly worked off-the-clock because FEs "were required to communicate with their mangers and advise them of their daily schedules, progress towards meeting their productivity requirements and hours worked." (Proposed Second Am. Compl. ¶ 37.)  Plaintiff's and the Opt-in Plaintiffs' admissions, however, refute this alleged awareness.

---

[4]    *Compare Richardson v. Wells Fargo Bank, N.A.,* No. 11-CV-00738 (NFA), 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012) (denying conditional certification where, like here, "most [p]laintiffs provide[d] no evidence that their supervisors actually told them that they must perform work off-the-clock" and plaintiffs' declarations and depositions established only that "most [p]laintiffs *believed* that they had to work off-the-clock in certain respects.") (emphasis in original) *with Amador v. Morgan Stanley & Co. LLC*, No. 11-CV-04326 (RJS), 2013 WL 494020, at *1, 5, 7 (S.D.N.Y. Feb. 7, 2013) (distinguishing *Richardson* and conditionally certifying action only because plaintiffs submitted evidence that "supervisors knew that [plaintiffs] were working overtime to satisfy the various demands of their jobs but nonetheless told [plaintiffs] not to accurately record their hours"); *see also Bijoux v. Amerigroup N.Y., LLC*, No. 14-CV-03891 (RJD) (VVP), 2015 WL 4505835, at *4, 6 & n.9 (E.D.N.Y. July 23, 2015) (conditionally certifying action only because evidence established that defendant "knew that its [employees] were working in excess of forty hours per week").

Specifically, Plaintiff stated in a sworn interrogatory response that he had no knowledge that any of the FEs that he supervised worked off-the-clock.  (Klugman Supp. Decl. Ex. A (Pl. Interrogatory Responses) at 8; *see id*. Ex. B (Pl. Dep.) 16:1-25 (testifying that, while serving as a Manager, he supervised between 8 and 17 employees, including FEs).)   Plaintiff provided the following sworn interrogatory response:

> **INTERROGATORY NO. 7**:  Identify any of Plaintiff's direct or indirect reports who did not receive compensation for all of the overtime hours that they worked or were directed to work at a time that they were not punched in and the person or persons who directed them to work without punching in.

> **RESPONSE TO INTERROGATORY NO. 7**:  Plaintiff is unaware at this time which specific employees did not receive compensation for overtime and/or were directed to work at a time that they were not punched in.

(*Id*. A (Pl. Interrogatory Responses) at 8.)[5]   Given this answer, if the Court allows Plaintiff to amend his complaint, Plaintiff would actually be a witness for Healthfirst against the Opt-in FEs in the subcollectives that he purports to represent.

Similarly, Ada Cheung, the only other Manager who has been deposed in this case, testified that she too was not aware of uniform and pervasive FLSA violations.  Ms. Cheung, who supervised approximately 19 employees, including FEs, on two different teams (*id*. Ex. D (Cheung Dep.) 19:4-7, 23:21-24:5), was aware of only two FEs who worked at a time that they were not clocked in, and neither FE is an Opt-in Plaintiff.  (*Id*. 130:21-131:10.)[6]

---

[5]   While Plaintiff later testified that he was aware that some FEs were directed to work off-the-clock (Klugman Supp. Decl. Ex. B (Pl. Dep. 193:15-194:3; 195:14-16), he clarified in moving for conditional certification that, consistent with his interrogatory response, his knowledge in this regard was limited to other FEs when he held the position.  (ECF No. 45 at 5-6.)  Given that Plaintiff was promoted to Manager in January 2012 (Am. Compl. ¶ 38)—more than three years prior to the time that any FE filed a consent to join this action—his knowledge as to the work of FEs prior to his promotion has no bearing on the pending motion.

[6]   One of the employees Ms. Cheung identified, Bin Yang, filed a consent to join this action, but later withdrew her claim and was dismissed from this action.  (ECF No. 53.)  The other individual identified by Ms. Cheung never joined this action.

The five declarations Plaintiff submits in support of his motion do not change this analysis. Three of the declarants worked as Healthfirst FEs and two declarants worked as Healthfirst Managers. (*See* ECF Nos. 261-9 through 261-13.) The three Opt-in FE declarations do not assert that Healthfirst knew that any of the vast majority of Opt-in FEs who were told not to work off-the-clock actually did so. (*See* ECF Nos. 261-9 through 261-11.) Nor do the two Manager declarations support Plaintiff's claim that Healthfirst's supervisors knew that FEs were working off-the-clock.[7] Neither individual states that she or he had personal knowledge of any FEs who actually worked off-the-clock. Rather, they attest only to their knowledge of each of Healthfirst's entirely lawful policies, and then state in conclusory fashion that "it was clear . . . that Facilitated Enrollers had to work off-the-clock to meet their quotas without receiving overtime compensation." (ECF Nos. 261-12 ¶ 10; 261-13 ¶ 10.) These assumptions, even if admissible evidence, do not support Plaintiff's allegation that Healthfirst's Managers had actual knowledge that FEs performed compensable off-the-clock work because the FEs were required to report this information to them. (*See* Proposed Second Am. Compl. ¶ 37.)

Nor do these declarations provide any evidence concerning FEs who reported to other Managers at Healthfirst. (*Cf.* Klugman Supp. Decl. Ex. B (Pl. Dep.) at 211:16-212:18 (Plaintiff testified that he had no knowledge as to whether any FEs on other teams that reported to other Managers had any unpaid overtime work).) As a result, these declarations do not demonstrate that Plaintiff can establish Healthfirst's knowledge of the FEs' overtime work through collective

---

[7] As an initial matter, the Court should disregard these declarations because both of these Managers attested that their employment with Healthfirst ended no later than August 2012—more than three years before any Opt-in FE aside from Navjot Kaur filed a consent to join this action. (*See* ECF Nos. 261-12 ¶ 1; 261-13 ¶ 1.) As a result, these Managers have no knowledge of Healthfirst's employment practices during the period relevant to the Opt-in Plaintiffs' FLSA claims. Additionally, based on their own admissions, these two Managers' FLSA claims are not viable because they accrued more than three years prior to the date that each opted into the action, and thus fall outside the FLSA's three-year statute of limitations. (*See* ECF Nos. 64 (Dammann Consent to Join Class (filed Sept. 3, 2015)); 181 (Lucas Consent to Join Class (filed Oct. 12, 2015)).)

proof, especially given the conflicting testimony of Plaintiff and Ms. Cheung.   Rather, the resolution of the Opt-in FEs' FLSA claims would require multiple individualized inquiries regarding the knowledge of each Healthfirst supervisor, including the Opt-in Plaintiffs in Collective Action A.[8]   Accordingly, the Court should deny Plaintiff's motion for leave to amend on futility grounds.

> 3.   *Plaintiff Cannot Establish that Healthfirst's Lawful Policies Uniformly Required FEs to Work Off-the-Clock*

The Court should also deny Plaintiff leave to amend because his admissions refute his assertion that Healthfirst's productivity requirements required all FEs to work off-the-clock.   Plaintiff's deposition testimony establishes that he and the FEs that he supervised did not need to work off-the-clock to meet Healthfirst's sales goals.   As Plaintiff testified, the FEs on his team, on average, produced 150% of Healthfirst's sales goals.   (Klugman Supp. Decl. Ex. B at 27:8-30:2; *see also id.* at 18:12-18; Ex. E (Pl. Resume) at 1.)   Similarly, when Plaintiff was an FE, he too "[p]roduced *more* than goals."   (*Id.* Ex. E (Pl. resume) at 2 (emphasis added); Ex. B (Pl. Dep.) at 265:8-20.)   Plaintiff's admission in this regard is corroborated by documentary evidence, including documents signed by Plaintiff, that demonstrate that Plaintiff was "always above" his sales goals while an FE.   (*See id.* Ex. F (Plaintiff's March 2011 Performance Review) at 1 (stating in a performance review that Plaintiff signed that "Kanwarpreet your ADP ["Average Daily Production"] for 2010 is always above goal.   It was always above 100%").)

Plaintiff also testified that his alleged off-the-clock work was unrelated to Healthfirst's sales goals.   During his deposition, however, Plaintiff claimed that he worked off-the-clock after his manager told him it would give him a better chance of obtaining a promotion to Manager.

---

[8]   Should the Court grant Plaintiff leave to amend, any Manager in Collective Action A who states that she/he was unaware that the FEs worked off-the-clock work would be a witness for Healthfirst against the proposed FE subcollectives.

(*Id.* Ex. C (Pl. Dep.) at 282:11-21 (claiming that his Manager told him that "there is no budget for the team . . . but if you can do more applications, you can be promoted later").)

The Court should also reject Plaintiff's argument repeated several times in his brief that, as an FE, Healthfirst's Vice President Stephanie Wu directed him to work off-the-clock to meet his productivity requirements.  (*See* Pl. Br. at 11, 15, 19.)  Contrary to this assertion, Plaintiff testified that only his Manager Usha Rani and her supervisor Anna Martinez directed him to work off-the-clock when he was an FE and that he never spoke to Stephanie Wu about his off-the-clock work when he was an FE.  (Klugman Supp. Decl. Ex. C (Pl. Dep.) at 280:14-23, 282:11-283:21.)[9]

The deposition testimony of Opt-in FE Navjot Kaur further refutes Plaintiff's assertion that Healthfirst's productivity requirements necessitated off-the-clock work.  Ms. Kaur testified that, with one exception, the only tasks she performed after concluding her work day and punching out involved sporadic, brief conversations of five minutes or less with prospective enrollees as she was leaving work.  (Klugman Decl. Ex. F at 172:18-173:22.)  She testified that she never completed any applications during these brief conversations, and thus did not use this time to meet sales goals.  (*Id.* 173:4-6.)  As to the one exception, Ms. Kaur testified that she met a client at the client's home at 7:30 a.m. without telling anyone at Healthfirst to accommodate this client—not to meet sales goals.  (*Id.* at 173:21-174:21.)

Finally, while Plaintiff submits declarations from three Opt-in FEs in which each states—using virtually identical conclusory language—that she/he worked off-the-clock to meet Healthfirst's sales goals, this does not change the fact that both Plaintiff and Ms. Kaur testified

---

[9]   In the portion of Plaintiff's deposition testimony cited in his brief in support of his claim that Ms. Wu directed him to work off-the-clock to meet his sales goals, Plaintiff actually testified that other members of his team told him that Ms. Wu directed them to work off-the-clock.  (*See* Pl. Br. at 15 (citing Ex. 7 (Pl. Dep.) at 194:13-195:20).)

that they were not subject to this alleged policy.  Accordingly, Plaintiff's and the Opt-in FEs'
admissions refute Plaintiff's claim that Healthfirst's lawful policies uniformly required FEs to
work off-the-clock.  As a result, the FLSA claims of the proposed subcollectives are not
susceptible to collective proof, and the Court should therefore deny Plaintiff's request for leave
to amend on futility grounds.

### B.  The Court Should Deny Leave to Amend Because Plaintiff Has Plead Himself Out of the Proposed Subcollectives and Cannot Represent Them

Plaintiff cannot bring a representative FLSA action on behalf of others unless he
demonstrates that there is a "'factual nexus' between [himself] and potential opt-in plaintiffs
'*with regard to their employer's alleged FLSA violation*.'"  *Morris v. Lettire Const., Corp.*, 896
F. Supp. 2d 265, 272 (S.D.N.Y. 2012) (emphasis in original) (quoting *Diaz v. S & H Bondi's
Dep't Store*, No. 10-CV-07676 (PGG), 2012 WL 137460, at *3 (S.D.N.Y. Jan. 18, 2012)).  To
meet this standard, Plaintiff must establish, at the very least, that he and the members of the class
that he seeks to represent were victims of the same alleged unlawful policy.  *See, e.g.*, *Jenkins v.
TJX Cos. Inc.*, 853 F. Supp. 2d 317, 322-23 (E.D.N.Y. 2012); *see Faria v. Allstate Merchant
Serv., LLC*, No. 09-CV-07444 (JSR), 2010 WL 1541576, at *1 (S.D.N.Y. Apr. 13, 2010)
(finding that proposed substitute named plaintiff was not an adequate representative for FLSA
collective and citing *East Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977) for the
proposition that a class representative must be a "member of the class, possess the same interest,
and suffer the same injury as the rest of [the] class").

Plaintiff's definitions of Collective Actions B-1 and B-2 exclude him from both
subcollectives because his admissions establish that he lacks the relevant factual nexus with the
FEs in each.  The proposed second amended complaint defines these subcollectives as including
only FEs who "worked off-the-clock hours **to meet Defendant's productivity requirements**."

(Proposed Second Am. Compl. ¶ 11 (emphasis added).)   As discussed above, Plaintiff's deposition testimony establishes that the direction he received to work off-the-clock was not related to Healthfirst's sales goals, but instead stemmed from his Manager's instruction that off-the-clock work would help him obtain a promotion.  (Klugman Supp. Decl. Ex. C at 282:11-21.) Plaintiff therefore is not a member of either subcollective, and there is no factual nexus between the FLSA violation that he alleges and the alleged unlawful policy to which he claims the subcollectives were subjected.  He thus cannot bring a representative action on behalf of either of the proposed subcollectives.

Plaintiff also cannot represent Collective Action B-2 because that subcollective is limited to FEs who worked off-the-clock "without express instruction from managers."  (Proposed Second Am. Compl. ¶ 11.)  The proposed second amended complaint does not contain factual allegations that Plaintiff (or any other FE) worked off-the-clock without direction, and, during his deposition testimony, Plaintiff asserted that he was directed to work off-the-clock.  (Klugman Decl. Ex. C (Pl. Dep.) 280:5-21.)  Plaintiff therefore does not share a factual nexus with Collective B-2 for this additional reason.

Accordingly, the Court should deny Plaintiff's motion for leave to amend because he is not a member of either of the proposed subcollectives.

### C.   Plaintiff's Proposed Second Amended Complaint is Filed in Bad Faith

The Court should deny Plaintiff's motion for leave to amend because Plaintiff acted in bad faith by, *inter alia*, submitting a proposed second amended complaint that contains allegations that Plaintiff previously disavowed, as well as other false allegations that contradict Plaintiff's prior sworn statements.  *See, e.g.*, *In re GPC Biotech AG Secs. Litig.,*  No. 07-CV-06728 (DC), 2009 WL 5125130, at *4 (S.D.N.Y. Dec. 29, 2009) (denying leave to amend where, *inter alia*, public records available to plaintiff prior to filing suit established that allegations in

original complaint were false); *Billy Baxter, Inc. v. Coca-Cola Co.*, 47 F.R.D. 345, 349-50 (S.D.N.Y. 1969) (denying leave to amend where plaintiff's interrogatory responses established that allegations in proposed amended complaint were false).  Plaintiff's conduct is this regard is rendered all the more egregious given that Plaintiff acknowledged the infirmities of these allegations in connection with his motion for conditional certification.  (*See* ECF No. 45 (Pl. Reply in Support of Mot. for Conditional Cert.) at 5-6 n.1.)  Accordingly, the Court should not permit Plaintiff to amend his complaint in an attempt to obtain certification of a new collective action based on an alleged *de facto* policy that did not apply to him.

1.    *Plaintiff Knowingly Includes Allegations that He Previously Disavowed in the Proposed Second Amended Complaint*

The Court should conclude that Plaintiff acted in bad faith because they knowingly included false allegations from the Prior Pleadings in the proposed second amended complaint. In his deposition, Plaintiff disavowed multiple allegations in both of the Prior Pleadings. Healthfirst first brought this issue to the Court's attention nearly a year ago in its opposition to Plaintiff's motion for conditional certification, and again raised it in its opening brief.  (*See* ECF No. 42 at 5-6, 12-13 (HF Opp. to Pl.'s Mot. for Conditional Cert. (July 8, 2015)); Healthfirst Br. at 4-5.)  Even though the falsity of the allegations is not disputed, Plaintiff includes these same false allegations concerning his overtime work in his proposed second amended complaint. While the Court earlier excused Plaintiff's failure to correct the Prior Pleadings, the Court should not permit Plaintiff to file yet another false pleading that does not conform to the standards set forth in Federal Rule of Civil Procedure 11.

Like the proposed second amended complaint, both of the Prior Pleadings allege that, as an FE, Plaintiff was required to work a fixed schedule seven days of the week that included at least 18 hours of off-the-clock, unpaid overtime work.  (Compl. (ECF No. 1) ¶¶ 33-38 (alleging

that Plaintiff was required to work at least 58 hours each week and work at times that he was "punch[ed] out" from Healthfirst's timekeeping system for all hours worked over 40); Am. Compl. (ECF No. 19) ¶¶ 32-37 (same).)  The Prior Pleadings allege that Plaintiff was required to work from 8:30 a.m. to 6:30 p.m. on weekdays "each and every week, without being permitted to take scheduled or uninterrupted breaks."  (Compl. ¶ 34; Am. Compl. ¶ 33.)  They also allege that Plaintiff was required to work four hours on both Saturday and Sunday "each and every week." (Compl. ¶ 34; Am. Compl. ¶ 33.)  The Prior Pleadings also allege that Plaintiff did not receive any "overtime" compensation for his overtime work.  (Compl. ¶¶ 37-38; Am. Compl. ¶¶ 36-37.)

Based on Plaintiff's deposition testimony there is no dispute that each of these allegations is false.  As Healthfirst stated in opposition to Plaintiff's motion for conditional certification:

> During his deposition, Plaintiff testified that each of the aforementioned allegations was false. . . . Plaintiff specifically admitted that:
>
> - the allegation that he worked seven days per week every week was false ([Klugman Supp. Decl. Ex. C] at 296:5-297:8);
>
> - the allegation that he worked a fixed, off-the-clock schedule was false (*id.* 297:9-298:19);
>
> - the allegation that he was not permitted to take breaks was false (*id.* 298:20-300:6); and
>
> - the allegations that he did not receive any "overtime" pay during his employment as a Facilitated Enroller were false (*id.* 300:7-302:12).

(ECF No. 42 at 5-6; *see also id.* at 12-13 ("The Court should deny Plaintiff's motion for conditional certification because he has admitted in sworn deposition testimony that his Amended Complaint is a sham in that the factual allegations underlying the alleged FLSA violations are false.").)  Moreover, Plaintiff acknowledged the inconsistencies of these allegations in his reply brief in support of his motion for conditional certification.  (*See id.* at 5-6 n.1 (acknowledging that (1) Plaintiff did not work seven days a week every week; (2) Plaintiff

did not work the same fixed schedule every week; and (3) Plaintiff was paid for some overtime hours).)

Despite Plaintiff's deposition testimony and his acknowledgement to this Court that these allegations were false, Plaintiff repeats each of these false allegations in his proposed second amended complaint.  (Proposed Second Am. Compl. ¶¶ 33-35.)  Indeed, paragraph 33 of the proposed second amended complaint is identical to paragraph 34 of the Complaint which Plaintiff testified was false in multiple respects, including that it falsely alleged that he worked seven days a week "each and every week" and that he worked a fixed off-the-clock schedule each week.  (*See* Klugman Supp. Decl. Ex. C at 296:5-300:16.)

The proposed second amended complaint also falsely alleges that Plaintiff did not receive any overtime pay during his employment as an FE.  (Proposed Second Am. Compl. ¶ 35 ("Defendant did not pay Plaintiff any wages for the hours that Plaintiff worked each week in excess of forty").)  Not only did Plaintiff testify that he received overtime pay while working as a Healthfirst FE (Klugman Supp. Decl. Ex. C at 300:7-302:12), the documentary evidence, including documents produced by Plaintiff, conclusively demonstrates that Plaintiff received overtime pay.  For example, Plaintiff's bi-weekly pay records reflect that he received "Overtime" pay during multiple weeks throughout his employment as a Facilitated Enroller.  (Klugman Decl. Ex. E at HF_THIND_211099-127 (excerpts of Plaintiff's bi-weekly pay records).)  Plaintiff also produced pay summaries for his last two full years as a Facilitated Enroller that reflect that he was paid for a total of 51.41 "Overtime" hours in 2010 and 63.3 "Overtime" hours in 2011.  (*Id.* at THIND 000073-74 (Plaintiff's annual pay summaries for 2010 and 2011).)

Moreover, Plaintiff cannot claim that he did not knowingly include these false allegations in the proposed second amended complaint because, as discussed above, he acknowledged these

inaccuracies in his conditional certification briefing.   (ECF No. 45 at 5-6 n.1.)   In addition, Healthfirst not only raised the inconsistency between these allegations and Plaintiff's deposition testimony in opposing conditional certification, but it also addressed these inconsistencies in its opening brief on the present motion.   (*See* Healthfirst Br. at 4-5.)   Accordingly, the Court should conclude that Plaintiff acted in bad faith by repeating false allegations from the Prior Pleadings in the proposed second amended complaint.

> 2.    *The Proposed Second Amended Complaint Adds New Allegations that Are Directly Contradicted by Plaintiff's Deposition Testimony and Other Evidence*

The Court should also conclude that Plaintiff and his counsel acted in bad faith because Plaintiff's deposition testimony refutes the new allegations added to the proposed second amended complaint relating to Plaintiff's new theory of certification.   Specifically, the proposed second amended complaint alleges that Plaintiff and all other FEs worked off-the-clock to meet Healthfirst's "productivity requirements."   (Proposed Second Am. Compl. ¶¶ 2, 11, 36.) Plaintiff's deposition testimony, however, refutes these allegations.

First, as described above (*see supra* Section II.A.3), Plaintiff testified that he was directed to work off-the-clock because he was told that doing so to would help him get promoted.  This stands in direct contradiction to Plaintiff's new allegations.   In addition, as discussed earlier (*see id.*), Plaintiff's testimony establishes that neither he nor the team that he supervised needed to work off-the-clock to meet Healthfirst's sales goals because his team consistently met or exceeded Healthfirst's sales goals and he had no knowledge that any of them worked off-the-clock to do so.   In fact, Plaintiff clarified in his motion for conditional certification that he did not have knowledge that any member of his team worked off-the-clock at the time that they reported to him.   (ECF No. 45 at 5-6 (acknowledging the truth of Plaintiff's interrogatory

response that he was unaware which of his direct or indirect reports did not receive compensation for overtime).)

Accordingly, the Court should conclude that Plaintiff acted in bad faith because his deposition testimony refutes the new allegations added to the proposed second amended complaint relating to the newly alleged unlawful policy.

## III.   THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR FINAL CERTIFICATION OF THE "NEWLY REDEFINED COLLECTIVE ACTION B"

Even if the Court grants Plaintiff's motion for leave to amend, it should deny Plaintiff's motion for final certification of Collective Actions B-1 and B-2 because Plaintiff has failed to meet his burden of proving that the FEs in each subcollective are similarly situated and that their claims are subject to collective proof.  As an initial matter, final certification is premature, as the parties have not taken discovery focused on the newly alleged *de facto* policy because such allegations did not exist in either of the Prior Pleadings.

At the decertification stage, the burden is on the plaintiff to prove that he and the opt-in plaintiffs are similarly situated.  *Myers*, 624 F.3d at 555.  To the extent the Court grants Plaintiff leave to amend, his certification motion should be denied because Plaintiff has failed to meet his burden of showing that the alleged *de facto* policy on which he relies was "sufficiently uniform and pervasive as to warrant class treatment."  *Zivali*, 784 F. Supp. 2d at 460 (citations omitted); *see also Ruiz*, 93 F. Supp. 3d at 299-300.  In *Ruiz*, this Court confronted the same unlawful policy alleged here:  the plaintiff alleged that "the competing demands for high production and low work hours created hydraulic pressure that predictably resulted in managers requiring off-the-clock work."  93 F. Supp. 3d at 290.  In that case, the Court granted the defendant's motion to decertify because plaintiffs "rel[ied] largely on anecdotal allegations of violations, secondhand statements regarding companywide policy to force unpaid overtime attributed to branch

managers, and a pair of entirely appropriate workplace policies that interacted—with highly uneven and uncertain effect—across [the defendant's] many branches." *Id.* at 299. Plaintiff's evidentiary showing in this case is far less robust than that found to be insufficient in *Ruiz.*

Plaintiff presents no evidence that Healthfirst's lawful policies required FEs to work off-the-clock on a companywide basis. At most, the declarations demonstrate that a handful of FEs claim that they worked off-the-clock to meet their sales goals and two Managers may have had knowledge that a few FEs were doing so prior to the time period applicable to the Opt-in FEs' FLSA claims. This evidence would be insufficient to meet Plaintiff's burden even in the absence of Plaintiff's and the Opt-in Plaintiffs' deposition testimony and interrogatory responses, discussed in detail above, that refute any claim of an unlawful policy that operated to common effect. *See Ruiz*, 93 F. Supp. 3d at 300.

The three factors courts typically consider on a decertification motion also support decertification for multiple reasons. (*See* Healthfirst Br. at 9-11.) Plaintiff's disparate factual and employment settings support decertification. In addition to the evidence demonstrating the absence of a uniform policy discussed above, Plaintiff does not dispute that the Opt-in FEs reported to over 50 Managers and worked at nearly 100 work sites scattered throughout New York City and Long Island. (*See id.* at 10.) Rather, Plaintiff asserts that these differences in work locations and supervisors are not material based on three decisions of this Court. Each of these decisions is inapposite because, unlike here, the members of collectives in those cases either worked at the same locations or reported the same supervisors. (*See* Pl. Br. at 25-26 (citing *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 367-68 (S.D.N.Y. 2014) (opt-ins all worked in the same facilities and had the same supervisors); *Alonso v. Uncle Jack's Steakhouse, Inc.*, No. 08-CV-07813 (DAB), 2011 WL 4389636, *1-3 (S.D.N.Y. Sept. 21, 2011)

(opt-ins worked at only three branches of a restaurant with a common owner and a single Director of Operations); *Pefanis v. Westway Diner, Inc.*, No. 08-CV-00002 (DLC), 2010 WL 3564426, *4 (S.D.N.Y. Sept. 7, 2010) (opt-ins included only the employees of a single restaurant).  Plaintiff also fails to acknowledge, let alone address, that evidence of factual disparities regarding off-the-clock work even within the same FE team further demonstrates the absence of a uniform policy susceptible to classwide resolution.  (*See* Healthfirst Br. at 10.)

Moreover, given the variances that are already apparent among the Opt-in FEs, the FLSA claims of the proposed subcollectives involve highly individualized situations.  As discussed above, it is readily apparent that there are wide disparities in whether or how the alleged unlawful policy was supposedly communicated to FEs (*see supra* Section III.A.2), whether Healthfirst Managers and supervisors had knowledge that the FEs were working off-the-clock (*see supra id.*) and whether Healthfirst's lawful policies required FEs to work off-the-clock to meet their sales goals (*see supra* Section III.A.3).  Based on these disparities, the Court should conclude that Plaintiff fails to establish that Healthfirst had any uniform business practices that violated the FLSA.[10]

In addition, individualized defenses prevent certification of the newly alleged class. Plaintiff does not address any of the individualized defenses identified in Healthfirst's opening brief.  (*See* Healthfirst Br. at 11.)  This factor weighs against certifying the newly alleged collectives.

Finally, fairness and procedural considerations support decertification of the proposed subcollectives.  Plaintiff now seeks certification of two subcollectives of FEs to which, by his

---

[10]   At a minimum, Plaintiff should be required, prior to final certification, to produce a trial plan showing how he intends to prove his claims on a collective basis, including providing an explanation of when and why facially valid production policies allegedly required some employees to work off-the-clock, while others routinely surpassed their sales goals without violating Healthfirst's written policies prohibiting any off-the-clock work.

own testimony, he was not similarly situated, based on a pleading that indisputably contains false allegations. Given the lack of the uniformity in the FEs employment circumstances and alleged off-the-clock work, resolution of the Opt-in FEs' FLSA claims would result in a series of individualized summary judgment motions and, to the extent any claim survives these motions, mini-trials, which are the "antithesis of collective action treatment" and would "eliminate any judicial efficiency that might be gained through a collective approach." *Zivali*, 784 F. Supp. 2d at 469 (citation omitted). In fact, FLSA overtime claims based on off-the-clock work are regularly decertified at stage two where, as here, the evidence does not demonstrate substantially similar circumstances susceptible to collective proof.[11]

Accordingly, to the extent the Court considers Plaintiff's motion for final certification, it should be denied with prejudice.

---

[11] *See Tanner v. Tpusa, Inc.*, No. 1:12-CV-00033 (WLS), 2015 WL 6940118, at *7 (M.D. Ga. Nov. 9, 2015) (holding that the plaintiff and opt-in plaintiffs are not similarly situated because "so many variables govern whether a plaintiff works off–the-clock that to determine the defendants' liability, and not merely its damages, would require individual testimony"); *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-00027, 2015 WL 6662919, at *4 (S.D. Ohio Nov. 2, 2015) (holding that the "evidence indicates that the decisions of individual workers and supervisors, not a company-wide policy, were the causal factor" of the alleged off-the-clock work); *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-03587 (YGR), 2014 WL 5877695, at *15 (N.D. Cal. Nov. 12, 2014) (granting defendant's motion to decertify plaintiff's off-the-clock FLSA overtime claim because the evidence showed "that whether an employee was subjected to off-the-clock work depended on a variety of individualized factors, paramount among them the identity of the manager under whom they worked.");.

## CONCLUSION

For the foregoing reasons, the Court should decertify Collective Action B, deny Plaintiff's motion for leave to amend the First Amended Complaint, dismiss the claims of the Opt-in FEs, deny Plaintiff's motion for final certification of the newly alleged Collective Actions B-1 and B-2, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
June 23, 2016

LEVINE LEE LLP

By:    s/ Scott B. Klugman
Scott B. Klugman
Seth L. Levine
Aaron I. Karp
666 Fifth Avenue
New York, New York 10103
Telephone:  (212) 223-4400
Facsimile:  (212) 223-4425
sklugman@levinelee.com
slevine@levinelee.com
akarp@levinelee.com

Andrew P. Marks
LITTLER MENDELSON P.C.
900 Third Avenue
New York, New York 10022
Telephone:  (212) 583-9600
Facsimile:  (212) 832-2719
amarks@littler.com

*Attorneys for Defendant*
*HF Management Services, LLC*