# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KANWARPREET THIND, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HF MANAGEMENT SERVICES, LLC, d/b/a HEALTHFIRST,<br><br>Defendant. | Civil Docket No. 14-09539-LGS<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |
| JUANA ORTIZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HF MANAGEMENT SERVICES, LLC, d/b/a HEALTHFIRST,<br><br>Defendant. | Civil Docket No. 17-04560-LGS<br><br>ECF Case |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THESE CASES

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................ 3

    A.    The Original and Amended Complaints ................................................. 3

        1.    The FE-Related Claims ................................................................. 3

        2.    The Manager-Related Claims ................................................... 5

        3.    Thind Admits that the Complaints Contain Numerous False Factual Allegations ................................................................. 5

    B.    Decertification of Collective B and the Partial Denial of Leave to Amend ........... 6

    C.    Withdrawal of Plaintiffs' Counsel and the Creation of Two Separate Actions ...... 8

    D.    The Second Amended Complaints ......................................................... 8

        1.    The FE Action ............................................................................... 8

        2.    The Manager Action ................................................................. 10

ARGUMENT ................................................................................................... 12

I.    THE COURT SHOULD DISMISS THE FE SAC AND THE MANAGER SAC BECAUSE BOTH VIOLATE THE COURT'S ORDER GRANTING LEAVE TO AMEND ...................................................................................................... 12

    A.    The Court Should Dismiss the FE SAC Because It Violates the Court's Order .. 13

        1.    The FE SAC Violates the Court's Order Because It Does Not Allege that the FEs Were "Expressly" Told to Work Off the Clock ........................... 13

        2.    The FE SAC Violates the Court's Order by Including a Named Plaintiff Who is Not a Member of the Collective the Court's Order Allowed ....... 14

        3.    The FE SAC Violates the Court's Order Because It Is Inconsistent with the Information that Has Come Out in Discovery ................................... 15

    B.    The Court Should Dismiss the Manager SAC Because It Violates the Court's Order by Continuing to Include False and Disavowed Allegations ................... 15

II.    THE COURT SHOULD DISMISS BOTH ACTIONS AND DENY LEAVE TO FILE ANY ADDITIONAL PLEADINGS ................................................................... 16

CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Bravo v. Established Burger One LLC*,
   No. 12-CV-9044, 2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) ............................................................... 13

*Palm Beach Strategic Income, LP v. Salzman*,
   457 F. App'x 40 (2d Cir. 2012) ............................................................................................................. 13

**Statutes**

29 U.S.C. § 255(a) ........................................................................................................................................ 10

Defendant HF Management Services, LLC ("Healthfirst" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss these related cases brought by Plaintiffs Juana Ortiz ("Ortiz") and Kanwarpreet Thind ("Thind") (collectively, "Plaintiffs").[1]

## PRELIMINARY STATEMENT

The Court should dismiss these related cases because Plaintiffs' amended complaints do not comply with this Court's order regarding the permitted scope of the amended pleadings. These cases purport to allege collective claims under the Fair Labor Standards Act ("FLSA") on behalf of two groups of Healthfirst current and former employees—Facilitated Enrollers ("FEs") and Managers. On December 9, 2016—over two years after these allegations were first raised in a consolidated complaint—the Court decertified the FLSA collective of FEs, yet granted Plaintiffs leave to amend pursuant to two conditions: (1) that the amended FE claims only include FEs who "were expressly told to work off the clock"; and (2) that the amended pleadings be "consistent with . . . the information that has come out in discovery," including eliminating the false and disavowed allegations contained in the prior pleadings. (ECF No. 274 (the "December 9 Opinion") at 8, 10.) The Second Amended Complaints violate these conditions and should be dismissed.

The FE Second Amended Complaint ("FE SAC"), filed by Ortiz, violates both of the Court's conditions in the December 9 Opinion. It violates the first condition by alleging a claim based not on an "express" instruction to work off-the-clock, but rather on Ortiz's alleged attempts

---

[1]   As discussed below, these cases started based on a consolidated complaint filed in *Thind v. HF Management Services, LLC*, Civil Docket No. 14-09539 (LGS). The Court subsequently ordered that they move forward as two actions with separate docket numbers. (ECF No. 313.) Due to a clerical error, the Clerk of Court administratively closed the case with the new docket number, *Ortiz v. HF Management Services, LLC*, Civil Docket No. 17-04560 (LGS). While the Court granted Plaintiff's request to move to reopen the new case, it remains administratively closed. As a result, Healthfirst has served its motion papers on Plaintiffs' counsel in both cases, but only filed them in Civil Docket No. 14-09539 (LGS). Healthfirst will file a duplicate copy of its motion papers in the new case after it is reopened. In addition, unless otherwise indicated, the ECF Nos. cited herein refer to documents filed in 14-09539 (LGS).

to meet "productivity requirements" by working off-the-clock without express instructions to do so.  These claims not only are inconsistent with the December 9 Opinion, but the Court expressly denied as "futile" a request to include them in an amended pleading.  (*Id.* at 9.)  The FE SAC also violates the Court's second condition because it contains factual allegations regarding the time and place of Ortiz's off-the-clock work that flatly contradict her verified interrogatory responses.

Likewise, the Manager Second Amended Complaint ("Manager SAC"), filed by Thind, violates the Court's second condition because it includes allegations from the prior pleadings that Thind expressly disavowed and other allegations that are inconsistent with discovery in this action. Among other things, the Manager SAC repeats word-for-word Thind's allegations regarding the number of hours he worked as Manager that he conceded under oath are false.  It also includes allegations concerning his work schedule and his responsibilities as Manager that are inconsistent with his deposition testimony and other evidence that he produced in discovery.

In the 31-month history of this matter, Plaintiffs have now filed five pleadings that variously have been legally deficient, factually untrue or violative of an unambiguous Court order. While the Court previously had excused Thind's inclusion of false allegations in the pleadings on several occasions to move this case forward, it made clear in ruling on the motion to amend that it would not continue to do so, ordering that any further pleadings must be "consistent with" the information that has come out in discovery.  Healthfirst should not, at this late stage, be required to respond to pleadings that contain allegations that are indisputably false.  Nor should the Court permit Plaintiffs to again attempt to remedy the deficiencies in their pleadings.  The Court should instead dismiss the claims of Plaintiffs and the opt-in FEs and Managers who have not previously been dismissed from this action ("Opt-in Plaintiffs") without prejudice, which would allow them to file individual actions to the extent they can do so consistently with the facts and the law.

## BACKGROUND

### A.      The Original and Amended Complaints

On December 3, 2014, Thind filed the original complaint ("Complaint" or "Compl.") in this action.  (*See Thind v. Healthfirst, Inc.*, No. 14-CV-9539 (LGS).)  Thind alleged that he was a former Healthfirst Facilitated Enroller ("FE") and Manager in the Facilitated Enrollment department ("Manager") and brought claims under the FLSA and New York Labor Law ("NYLL").  While Thind purported to bring all claims on behalf of other FEs and Managers, the Complaint included FLSA collective action allegations only on behalf of Managers.  (*See generally* Compl. (ECF No. 1).)

On February 20, 2015, Thind filed an amended complaint ("Amended Complaint" or "Am. Compl.") that alleged FLSA claims on behalf of two distinct putative groups of employees: (1) Collective A comprised of current and former Managers; and (2) Collective B comprised of current and former FEs.  (Am. Compl. (ECF No. 19) ¶ 11.)  The Amended Complaint also alleged putative class action claims under the NYLL on behalf of the same two groups of employees.  (*Id.* ¶ 17.)  In an Order dated July 31, 2015, the Court granted Plaintiff's motion to conditionally certify both collective actions.  (ECF No. 55.)

#### 1.      *The FE-Related Claims*

The FE-related claims were based on the allegation that Healthfirst did not pay FEs for their overtime work.[2]  Thind did not allege, however, that Healthfirst treated FEs as exempt from overtime.  To the contrary, the Amended Complaint acknowledged that Healthfirst paid FEs as if they were non-exempt (*see* Am. Compl. ¶ 2), and it is undisputed that Healthfirst's written policy

---

[2]      The Court dismissed the Amended Complaint's minimum wage claims (Counts Two and Four) and claim for failure to pay wages (Count Five) on July 29, 2015.  (ECF No. 54.)

required FEs to be paid a premium for all overtime worked.  (*See* ECF No. 274 at 1.)  As this Court stated:

> Healthfirst's Employee Handbook contains a written policy that non-exempt employees may not work more than their scheduled work hours without authorization from their manager.  The handbook further states that non-exempt employees are to be paid one and one-half times their regular pay for any time worked in excess of forty hours per week.

(*Id.*)

Given Healthfirst's written policies, Thind based his claims on an alleged *de facto* policy deviation, *i.e.*, that he was expressly directed to work off-the-clock.  Specifically, Thind alleged that Healthfirst required him to work a fixed schedule seven days per week that included at least 18 hours of off-the-clock, unpaid overtime work each week.  (Am. Compl. ¶¶ 33-35 (alleging that Plaintiff was required to work at least from 8:30 a.m. through 6:30 p.m. each weekday and for four hours on both weekend days each week).)  The Amended Complaint further alleged that:

> Defendant required [Thind] to punch out after eight hours of work on the weekdays, but then demanded that he continue working without receiving any compensation for the additional hours.  On the weekends, Defendant required [Thind] to work without punching in at all, meaning that [Thind] did not receive any compensation for those hours worked.

(*Id.* ¶ 36.)

Following conditional certification, Healthfirst served discovery requests on the FEs who joined Collective B (the "Opt-in FEs").  Only 70 Opt-in FEs responded to Healthfirst's discovery requests (ECF No. 274 at 2), and the Court dismissed the non-responding Opt-in FEs from this action.  (*See* Declaration of Scott B. Klugman ("Klugman Decl.") Ex. A (10/19/16 Tr.) at 3:16-4:7; ECF No. 313 at 2.)  In addition, as discussed below, the Court dismissed additional Opt-in FEs from this action in ruling on Healthfirst's motion for decertification.

2.     *The Manager-Related Claims*

The Manager-related claims were also based on the allegation that Healthfirst did not pay its employees for their overtime work.   Thind's Manager-related claims were based on a misclassification theory, *i.e.*, they alleged that Healthfirst misclassified Managers as exempt employees.   (Am. Compl. ¶ 2.)   As to his work schedule as a Manager, Thind alleged that Healthfirst required him to work between 70 and 80 hours per week, seven days per week, every week.   (*Id.* ¶ 43.)

Following conditional certification, Healthfirst served discovery requests on the Managers who joined Collective A (the "Opt-in Managers").   Only 13 Opt-in Managers responded to Healthfirst's discovery requests (ECF No. 311, 311-2), and the Court dismissed the non-responding Opt-in Managers from this action, (*see* Klugman Decl. Ex. A (10/19/16 Tr.) at 3:16-4:7; ECF No. 313 at 2).

3.     *Thind Admits that the Complaints Contain Numerous False Factual Allegations*

Thind admitted during his deposition that both the Complaint and Amended Complaint were replete with false factual allegations.   For example, Thind disavowed the following allegations as false:  (1) the allegation that he worked seven days per week every week (Klugman Decl. Ex. B (Thind Dep.) 296:5-297:8); (2) the allegation that he worked a fixed, off-the-clock schedule (*id.* 297:9-298:19); (3) the allegation that he was not permitted to take breaks (*id.* 298:20-300:6); (4) the allegations that he did not receive any "overtime" pay during his employment as a Facilitated Enroller (*id.* 300:7-302:12); and (5) the allegation that he worked between 70 and 80 hours per week each week as a Manager (*id.* 302:13-303:7).[3]

---

[3]     In the excerpted portion of the testimony, Thind specifically admitted that paragraphs 34, 37, 38 and 44 of the Complaint are "false."  The Amended Complaint repeats these same allegations.  (*Compare* Compl. ¶¶ 34, 37, 38 and 44 *with* Am. Compl. ¶¶ 33, 36, 37 and 43.)

### B.      Decertification of Collective B and the Partial Denial of Leave to Amend

Healthfirst served interrogatories on the Opt-in FEs asking them, *inter alia*, to identify every person who directed them to work off the clock.  (ECF No. 274 at 2.)  The great majority of the responding Opt-in FEs attested that they were never directed to work off the clock.  Specifically, of the 70 responding Opt-in FEs, only 16 Opt-in FEs named one or more supervisors who had directed them to work off the clock.  (*Id.* at 2.)

Based on the interrogatory responses, Healthfirst, moved, with leave from the Court, to decertify Collective B prior to the close of discovery.  (ECF Nos. 251, 255.)  Thind opposed Healthfirst's motion and filed a cross motion for leave to file a second amended complaint purportedly to remedy the deficiencies identified in Healthfirst's decertification motion.  (ECF No. 260.)  Thind's cross motion attached a proposed second amended complaint (the "Proposed SAC") that divided Collective B into two subcollectives:  (1) Collective B1 comprised of Opt-in FEs who "worked off-the-clock hours to meet Defendant's productivity requirement *with express instruction* from managers"; and (2) Collective B2 comprised of Opt-in FEs who "worked off-the-clock hours to meet Defendant's productivity requirement *without express instruction* from managers."  (ECF No. 261-2 (the "Proposed SAC") ¶ 11 (emphases added).)  Notably, the Proposed SAC contained the same false factual allegations as those contained in Thind's prior complaints.  (*Compare* Compl. ¶¶ 34, 38, 44 and Am. Compl. ¶¶ 33, 37, 43 *with* Proposed SAC ¶¶ 33, 39, 45.)  Thind attributed his re-inclusion of the false factual allegations to his belief that the Court granted him permission only to make a narrow amendment to the First Amended Complaint to modify the definition of Collective B, (*see* ECF No. 274 at 9), but pledged that should the Court require him to revise his complaint to conform with discovery, "Plaintiff will surely, and gladly, do so."  (ECF No. 267 at 10.)

6

In the December 9 Opinion, the Court granted Healthfirst's motion to decertify Collective

B, concluding that "the current Collective B is not a viable collective." (ECF No. 274 at 5-7.) In

so doing, the Court stated:

> Given the factual differences among the opt-in plaintiffs, Thind cannot demonstrate
> that Healthfirst employed a single, uniform policy of explicitly directing Facilitated
> Enrollers to work off the clock in violation of its clear written policy. The opt-in
> plaintiffs fall into two discrete groups -- those who were explicitly told to work off
> the clock and those who were not. They therefore are not similarly situated for
> purposes of moving forward as one collective.

(*Id.* at 5-6.)

The December 9 Opinion also granted in part and denied in part Thind's cross motion to

amend the complaint. (*Id.* at 8-10.) The Court permitted Thind to replace Collective B with

Collective B1, finding that "all of the opt-in plaintiffs in Collective B1 allege the same FLSA

violation based on receiving an explicit direction to work off the clock despite Healthfirst's written

policy." (*Id.* at 8.) The Court, however, denied as futile the portion of Thind's motion to include

Collective B2 in an amended complaint. (*Id.* at 9.) The Court stated:

> the members of Collective B2 would need to establish that Healthfirst knew that
> each of them individually was working overtime without pay despite not expressly
> instructing them to do so. This inquiry is necessarily individualized. Healthfirst's
> defenses also would be individualized. Adjudicating the claims of Collective B2
> would require roughly seventy mini-trials, which defeats the purpose of collective
> proof. Consequently, neither conditional nor final certification of Collective B2 is
> appropriate.

(*Id.* at 9-10.)

Even though the Court granted a portion of Thind's motion to amend, the Court did not

accept the Proposed SAC. (*Id.* at 10.) In partially granting the motion, the Court excused the

"discrepancies between the proposed Second Amended Complaint and information revealed in

discovery" based on Thind's assertion that his understanding of the Court's direction only

permitted a "narrow amendment of the definition of Collective B rather than significant revisions

to the proposed Second Amended Complaint." (*Id*. at 9.) The Court's December 9 Opinion, however, made clear that any further amended complaint must not contain disavowed allegations or other discrepancies with the information revealed in discovery, limiting its grant of leave to a new second amended complaint that "is consistent with [the December 9] Opinion and the information that has come out in discovery." (*Id.* at 10.)

### C.    Withdrawal of Plaintiffs' Counsel and the Creation of Two Separate Actions

Following the Court's issuance of the December 9 Opinion, counsel for Thind and all Opt-in Plaintiffs withdrew from this case prior to the filing of a new second amended complaint. (ECF No. 290.) Since this withdrawal, Collective A and Collective B1 have been separately represented by two new law firms who filed substitution of counsel notices. (*See* ECF Nos. 294, 296.)

Based on the requests of these new law firms, the Court ordered that Collective A and Collective B1 move forward as two separate actions. (ECF No. 308.) After new counsel advised the Court that both Collectives intended to file amended complaints (*see* ECF No. 307), the Court ordered that any amended complaints be filed by June 16, 2017. (ECF No. 308, 313.) New counsel for Collective A indicated that Thind would continue to represent Collective A. (ECF No. 307.) New counsel for Collective B1 advised the Court that Thind would no longer serve as the representative for Collective B1 and that it would identify the new representative at the time it filed the amended complaint. (*Id.*)

### D.    The Second Amended Complaints

#### 1.    *The FE Action*

On June 16, 2017, counsel for the remaining FEs filed the FE SAC naming Juana Ortiz as the representative for the FE Collective.[4] (FE SAC ¶ 1.) Ortiz had filed a consent form to join

---

[4]    At the direction of the Court (*see* ECF No. 313 at 2), FE Counsel filed the FE SAC as a new case, docketed as Civil Action No. 17-4560.

this action on September 14, 2015 (ECF No. 99), and responded to Healthfirst's discovery requests in January 2016.

According to the FE SAC, Ortiz worked as an FE from approximately March 9, 2007 to January 22, 2013.  (FE SAC ¶ 2.)  Ortiz also alleges the days and hours that she worked.  (*Id.* ¶ 33 (alleging that she worked from at least 8:30 a.m. through 6:30 p.m. Monday through Friday of each and every week and frequently worked approximately four hours on Saturdays).)  But this allegation conflicts with Ortiz's verified interrogatory responses in which she attested that she "d[id] not recall specific dates, days, or hours worked." (Klugman Decl. Ex. D (Ortiz Interrogatory Responses) at 4.)

In addition, the FE SAC is premised on the dismissed Collective B2 theory, not the Collective B1 theory of relief the Court allowed.  Whereas the Court authorized the filing of an amended complaint on behalf of FEs "who were expressly told to work off the clock" (ECF No. 274 at 7), the FE SAC defines the Collective as being comprised of FEs who joined this action and "worked off-the-clock hours to meet Defendant's productivity requirement with instruction from managers."  (FE SAC ¶ 11; *compare with* ECF No. 261-2 ¶ 11 (defining Collective B1 as being comprised of FEs who joined this action and "worked off-the-clock hours to meet Defendant's productivity requirement with ***express*** instruction from managers") (emphasis added).)  In other words, Ortiz alleges that Healthfirst was aware of her off-the-clock work, but not that it expressly directed her to work off the clock.  Specifically, the FE SAC alleges that Healthfirst "did not pay [Ortiz] any wages for the hours that [Ortiz] worked each week in excess of forty off-the-clock, telling [Ortiz] that there was no budget for her to work overtime, yet simultaneously accepting the benefit of all of her hours worked."  (FE SAC ¶ 35.)  She further alleges that "[a]t all times, ***Defendant was aware of [Ortiz's] off-the-clock work***, as all Facilitated Enrollers were required to

communicate with their managers and advise them of their daily schedules, progress towards meeting their productivity requirements and hours worked," but did not pay her for any off-the-clock work.  (*Id.* ¶¶ 37-38 (emphasis added).)

Notably, based on her interrogatory responses, Ortiz cannot truthfully allege that she was expressly directed to work off the clock during the period applicable to her FLSA claim.  *See* 29 U.S.C. § 255(a).  In her verified interrogatory responses, Ortiz identified Manager Mildred Ramos as the only Healthfirst employee who directed her to work off the clock.  (Klugman Decl. Ex. D (Ortiz Interrogatory Responses) at 4.)  Ms. Ramos, however, has not worked for Healthfirst since April 2009—more than six years prior to the time that Ortiz filed a consent form to join this case.

In addition, while purporting to provide one example of Ortiz's alleged uncompensated work as an FE, the FE SAC itself undermines this allegation.  (*See* FE SAC ¶¶ 32-34.)  In this "example," the FE SAC alleges that Ortiz performed uncompensated work in April 2013.  (FE SAC ¶ 34.)  But just two paragraphs prior, Ortiz acknowledges that she ceased working as an FE as of January 22, 2013.  (*Id.* ¶ 32; *see also id.* ¶ 2 (alleging that from January 22, 2013 through her termination she was employed "in an alternate capacity.").)  Therefore, whatever off-the-clock work Ortiz allegedly performed was not in her capacity as an FE.

2.    *The Manager Action*

On June 16, 2017, counsel for the remaining Managers filed the Manager SAC again naming Thind as the representative for Collective A.  (Manager SAC at 1.)  The Manager SAC, for the most part, repeats the Manager-related allegations in the prior complaints filed by Thind, including certain allegations that Thind disavowed during his deposition, despite the Court's admonition to conform this pleading to information that has come out in discovery.

The Manager SAC alleges that Healthfirst misclassified Managers as exempt employees and did not pay them for their overtime work.  (*Id.* ¶ 2.)  As to his work schedule as a Manager,

the Manager SAC contains the following allegation:  "Throughout [Thind's] entire period of

employment as a 'Manager for Sales,' the Defendant required [Thind] to work, and [Thind] did in

fact work, between seventy and eighty hours per week, seven days a week, all for Defendant's

benefit."  (*Id.* ¶ 32.)  The Complaint, Amended Complaint and Proposed SAC each contain an

identical allegation (Compl. ¶ 44; Am. Compl. ¶ 43; ECF No. 261-2 ¶ 45), yet Thind admitted this

allegation was false during his deposition.  (Klugman Decl. Ex. B 302:13-303:7.)

Specifically, Thind testified that, while working as a Manager, he worked an average of

fifty to sixty hours during a typical workweek.  (Klugman Decl. Ex. C (Thind Dep.) 256:15-257:9.)

As to the discrepancy between this testimony and the allegations in his complaints, Thind testified

as follows:

> Q.  Paragraph 44 [of the Complaint], your testimony was that while you were a
> manager you worked between 50 and 60 hours per week on average.  That was
> your testimony, correct?
>
> A.  Yes.
>
> Q.  This paragraph says that you worked between 70 and 80 hours per week seven
> days a week during the time you were employed as a manager.  Is that what this
> paragraph says?
>
> A.  Not all the time.  There were times that I worked 70 to 80 hours.  Originally
> when I come, I come up to 50 or 60.
>
> Q.  This paragraph says that you worked 70 to 80 all the time in substance.
>
> A.  Not all the time.
>
> Q.  This paragraph is false, correct?
>
> A.  Yes.

(Klugman Decl. Ex. B 302:13-303:7.)

The Manager SAC also conflicts with Thind's testimony in multiple other respects.  For

example, Thind testified during his deposition that he had no recollection of the hours that he

worked on Monday, August 11, 2014, or the days and hours he worked during his last month of

11

employment at Healthfirst.  (Klugman Decl. Ex. C 260:7-261:21.)  Yet, like the Complaint and Amended Complaint, the Manager SAC alleges the hours Thind worked during the last full week prior to his termination, including Monday, August 11, 2014.  (Manager SAC ¶ 33; *see also* Compl. ¶ 45; Am. Compl. ¶ 44.)  In addition, Thind's testimony refutes the allegation that he did not "direct the work of any other employees" but rather was "only permitted to readjust work assignments in accordance with [his] vice president's guidelines."  (Manager SAC ¶¶ 30, 31.) Thind testified that the following description contained in his resume accurately set forth his duties as Manager:  "responsible for managing the day-to-day activities of the facilitator enrollers and retention specialists, CAC for health insurance exchange, while identifying best practices for sales and maintaining the highest standard of quality." (Klugman Decl. Ex. C 19:18-20:13.)  Thind also testified that, as a Manager, he "supervise[d]" between 8 and 17 employees at any one time.  (*Id.* 16:4-20.)  Thind included all of the above allegations in the Manager SAC despite pledging to remove them should the Court require an amended complaint to conform to evidence that has emerged during discovery (*see* ECF No. 267 at 10)—as the Court here did, (ECF No. 274 at 10).

## ARGUMENT

**I.    THE COURT SHOULD DISMISS THE FE SAC AND THE MANAGER SAC BECAUSE BOTH VIOLATE THE COURT'S ORDER GRANTING LEAVE TO AMEND**

The Court should dismiss the FE SAC and the Manager SAC pursuant to its inherent authority because both violate the Court's December 9 Opinion granting limited leave to amend. That Opinion required any amended pleading to comply with two conditions:  (1) that the amended FE claims include only allegations that FEs "were expressly told to work off the clock"; and (2) that all false and disavowed allegations be removed such that the amended pleading is "consistent with . . . the information that has come out in discovery."  (ECF No. 274 at 8, 10.)  The FE SAC violates both conditions and the Manager SAC violates the second condition.

"District Courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order); *Bravo v. Established Burger One LLC*, No. 12-CV-9044, 2013 WL 5549495, at *5 (S.D.N.Y. Oct. 8, 2013).  The Court's authority to dismiss claims that exceed a leave to amend order stems from the Court's inherent authority, which includes the power to dismiss a party's claims and strike a party's pleadings for failure to obey court orders.  *Bravo*, 2013 WL 5549495 at *5 (dismissing claims added to an amended complaint on the ground that the amended complaint added new claims when the court's order permitted plaintiffs to amend their complaint only to add new parties to the claims already asserted).

A.      **The Court Should Dismiss the FE SAC Because It Violates the Court's Order**

The Court should dismiss the FE SAC because it violates the Court's December 9 Opinion by failing to allege that the members of the putative FE Collective—including Ortiz—were "expressly told to work off the clock" and by failing to conform to discovery.

1.      *The FE SAC Violates the Court's Order Because It Does Not Allege that the FEs Were "Expressly" Told to Work Off the Clock*

The Court's December 9 Opinion only permitted the filing of an amended complaint based on the Proposed SAC's B1 theory that FEs were "expressly told to work off the clock."  (ECF No. 274 at 8.)  Despite this unambiguous order, the FE SAC does not allege an express instruction to work off the clock.  Rather, it alleges the dismissed B2 theory that Healthfirst knew that FEs were working off the clock to meet productivity requirements.  (*See* FE SAC ¶¶ 2, 36-37.)

In fact, it appears that Ortiz carefully edited the Court's approved FE Collective definition to avoid alleging the "express" instruction that the Court required.  As discussed above, the Court

granted leave to amend only to allege the FE Collective: FEs who "worked off-the-clock hours to meet Defendant's productivity requirement with ***express*** instruction from managers." (ECF No. 261-2 (Proposed SAC) ¶ 11 (emphasis added).) The FE SAC includes that allegation verbatim, but with one crucial exception: the omission of the word "express." (FE SAC ¶ 11.) The FE SAC's formulation ignores the Court's order and instead impermissibly expands the class to include the B2 claims the Court rejected at "futile." (ECF No. 274 at 9.) As the Court premised its grant of leave to amend on the inclusion of allegations of an "***explicit*** direction to work off the clock" (*id.* at 8 (emphasis added)), the FE SAC's failure to include that allegation violates the Court's order, and therefore, it should be dismissed.

2. *The FE SAC Violates the Court's Order by Including a Named Plaintiff Who is Not a Member of the Collective the Court's Order Allowed*

As the FE SAC does not allege that Ortiz was expressly told to work off the clock, it should be dismissed because it fails to allege that Ortiz was a member of the FE Collective allowed by the December 9 Opinion. Indeed, Ortiz could not allege such a collective theory because the only Healthfirst employee who she identified as directing her to work off-the-clock left Healthfirst's employment more than six years prior to the date she joined this case.

Instead of complying with the December 9 Opinion, Ortiz bases her claims on the Collective B2 theory rejected by the Court, alleging that she worked off the clock "to meet [Healthfirst's] weekly productivity requirement" and that Healthfirst "was aware [her] off-the-clock work, as all Facilitated Enrollers were required to communicate with their managers and advise them of their daily schedules, progress towards meeting their productivity requirements and hours worked." (FE SAC ¶¶ 36-37.) As these allegations contravene the Court's requirement that the second amended complaint allege "express" direction concerning off-the-clock work, Ortiz cannot assert claims in conformity with the December 9 Opinion. (ECF No. 274 9-10.)

14

3.      *The FE SAC Violates the Court's Order Because It Is Inconsistent with the Information that Has Come Out in Discovery*

In addition, the FE SAC does not comply with the December 9 Opinion because it is not consistent with the information that has come out in discovery.  (*See* ECF No. 274 at 10.)  Whereas Ortiz attested in her interrogatory responses that she "d[id] not recall specific dates, days, or hours worked" (Klugman Decl. Ex. D (Ortiz Interrogatory Responses) at 4), the FE SAC includes allegations relating to the specific dates, days and hours that Ortiz claims to have worked.  (*See* FE SAC ¶¶ 2, 33.)  This additional violation of the December 9 Opinion should also result in the FE SAC's dismissal.

The FE SAC is also internally self-contradictory.  While purporting to allege Ortiz's off-the-clock work as an FE, the only specific "example" regarding such alleged off-the-clock work relates to a period where she admits that she was not an FE.  (*Id.* ¶¶ 32-34.)  Ortiz alleges that she did not receive overtime compensation for overtime hours that she worked during the week of April 22, 2013, but alleges just two paragraphs prior that she ceased being an FE in January 2013.  (*Id.*)

\* \* \*

Accordingly, the Court should conclude that, for the reasons stated herein, the FE SAC fails to comply with the Court's limited grant of leave to amend in the December 9 Opinion.  The Court should therefore dismiss the FE SAC.

**B.      The Court Should Dismiss the Manager SAC Because It Violates the Court's Order by Continuing to Include False and Disavowed Allegations**

The Manager SAC similarly violates the December 9 Opinion because it continues to include the false and disavowed allegations that the Court ordered Thind to remove.  Over one year ago, Thind acknowledged that numerous allegations in the then-operative Amended Complaint were false and promised to remove them should the Court so require.  (*See* ECF No. 267

15

at 10.)  The December 9 Opinion set that requirement, ordering that the second amended complaint must be consistent with "the information that has come out in discovery."  (ECF No. 274 at 10.)  However, the Manager SAC violates that order by continuing to include allegations that Thind expressly disavowed and that are inconsistent with discovery, and thus should be dismissed.

Specifically, at his 2015 deposition, Thind disavowed the allegations contained in paragraph 44 of his Complaint and paragraph 43 of the Amended Complaint relating to the amount of weekly hours he allegedly worked as a Manager.  (Klugman Decl. Ex. B 302:13-303:7.)  Yet, Thind inexplicably again includes these same false factual allegations in the Manager SAC.  (Manager SAC ¶ 32.)  The Manager SAC also contains multiple other allegations that conflict with Thind's deposition testimony.  For example, Thind does not have a good faith basis to include allegations concerning the hours that he worked during his last full week of employment at Healthfirst (*id.* ¶ 33)—which are identical to allegations in his prior pleadings—given his testimony that he did not recall the specific hours or days that he worked during his last month at Healthfirst. (Klugman Decl. Ex. C 260:7-261:21.)  In addition, the Manager SAC's allegation that Thind and other managers did not "direct the work of any other employees" and were restricted to "only . . . readjust[ing] work assignments" (Manager SAC ¶¶ 30, 31) conflicts with, *inter alia*, Thind's testimony that his primary duty as Manager was to "supervise" between 8 and 17 employees and "manag[e] [their] day-to-day activities."  (Klugman Decl. Ex. C 16:4-20, 19:18-20:13.)  The Court should therefore dismiss the Manager SAC.

## II.   THE COURT SHOULD DISMISS BOTH ACTIONS AND DENY LEAVE TO FILE ANY ADDITIONAL PLEADINGS

Given the history of this case, the proper remedy is dismissal of these actions and denial of any further leave to amend.  This case has now been pending for more than two-and-a-half years.  During that time, Plaintiffs purporting to represent the two collectives have yet to file a complaint

that is consistent with this Court's orders and their own sworn statements in discovery.  Plaintiffs have now collectively filed five separate pleadings or proposed pleadings which fail to comply with these most basic requirements.

This conduct is rendered all the more egregious given that Healthfirst has raised these same issues with the Court on multiple occasions.  (*See* ECF No. 42 at 4-6, 8-9, 12-13 (arguing that the Court should deny conditional certification because Thind admitted that (1) the Amended Complaint's allegations concerning his overtime work as an FE were false; and (2) the Amended Complaint's allegations concerning his job duties as Manager were false); ECF No. 265 at 15-20 (arguing that the Court should deny Thind's motion for leave to amend because the Proposed SAC contains allegations that Thind previously disavowed, as well as other false allegations that contradict Thind's prior sworn statements and other evidence).)   While the Court previously excused the failure to correct the prior pleadings, the Court made clear in the December 9 Opinion that any further pleadings must not contain false allegations or other allegations that are indisputably inconsistent with the information revealed in discovery.  (ECF No. 274 at 10.)  The Court therefore should not grant Plaintiffs another attempt to plausibly allege collective and class claims on behalf of these two groups of employees.  The Court instead should dismiss the claims of the remaining Plaintiffs and Opt-in Plaintiffs in these actions without prejudice, which would allow them the opportunity to file individual actions to the extent they can do so consistently with the facts and the law.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the FE SAC, Manager SAC and the claims of the remaining Plaintiffs and Opt-in Plaintiffs without prejudice and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        July 7, 2017

By:   s/ Scott B. Klugman

Scott B. Klugman
Seth L. Levine
Aaron I. Karp
**LEVINE LEE LLP**
650 Fifth Avenue, 13th Floor
New York, New York 10019
Telephone:  (212) 223-4400
Facsimile:  (212) 223-4425
sklugman@levinelee.com
slevine@levinelee.com
akarp@levinelee.com

Andrew P. Marks
**LITTLER MENDELSON P.C.**
900 Third Avenue
New York, New York 10022
Telephone:  (212) 583-9600
Facsimile:  (212) 832-2719
amarks@littler.com

*Attorneys for Defendant*
*HF Management Services, LLC*
