**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUANA ORTIZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HF MANAGEMENT SERVICES, LLC, d/b/a HEALTHFIRST,<br><br>Defendant. | Civil Docket No. 17-04560-LGS<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |
| KANWARPREET THIND, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HF MANAGEMENT SERVICES, LLC, d/b/a HEALTHFIRST,<br><br>Defendant. | Civil Docket No. 14-09539-LGS<br><br>ECF Case |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THESE CASES AND IN OPPOSITION TO PLAINTIFF JUANA ORTIZ'S CROSS-MOTION FOR LEAVE TO AMEND**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT ......................................................................................... 4

I.    THE COURT SHOULD DISMISS THE FE SAC AND DENY LEAVE TO AMEND ... 5

    A.    The FE SAC Should Be Dismissed ......................................... 5

        1.    The FE SAC Violates the Court's Order Because It Does Not Allege that the FEs Were "Expressly" Told to Work Off the Clock ............................ 5

        2.    The FE SAC Violates the Court's Order by Including a Named Plaintiff Who is Not a Member of the Permitted Collective .................................... 6

        3.    The FE SAC Violates the Court's Order Because It Is Inconsistent with the Information that Has Come Out in Discovery ..................................... 7

    B.    The Court Should Deny Ortiz's Request for Leave to Amend ............................. 8

        1.    Ortiz's Cross-Motion Should Be Denied Because She Has Failed to Demonstrate Good Cause .......................................................... 8

        2.    Ortiz's Cross-Motion Should Be Denied Because the Proposed Complaint Continues to Violate the Court's December 9 Opinion ............................ 10

        3.    Ortiz's Cross-Motion Should Be Denied Based on Her Sworn Interrogatory Responses ....................................................... 10

II.   THE COURT SHOULD DISMISS THE MANAGER SAC AND DENY LEAVE TO AMEND ....................................................................................... 14

    A.    The Manager SAC Should Be Dismissed ......................................... 14

    B.    The Court Should Deny Thind's Request for Leave to Amend ........................ 17

III.  THE COURT SHOULD DISMISS THESE CASES ..................................... 18

CONCLUSION ................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Farsetta v. Dep't of Veterans Affairs*,
   No. 16-cv-6124 (DLC), 2017 WL 3669561 (S.D.N.Y. Aug. 24, 2017) ................................. 19

*Haas v. Delaware & Hudson Ry. Co.*,
   282 F. App'x 84 (2d Cir. 2008) ....................................................................................... 12, 13

*In re Fosamax Prods. Liab. Litig.*,
   707 F.3d 189 (2d Cir. 2013) ........................................................................................... 13, 14

*Kassman v. KPMG LLP*,
   No. 11-cv-03743 (LGS), 2014 WL 3298884 (S.D.N.Y. July 8, 2014) ................................... 14

*Marciano v. DCH Auto Grp.*,
   14 F. Supp. 3d 322 (S.D.N.Y. 2014) ....................................................................................... 14

*Margo v. Weiss*,
   213 F.3d 55 (2d Cir. 2000) ..................................................................................................... 14

*Parker v. Columbia Pictures Indus.*,
   204 F.3d 326 (2d Cir. 2000) ............................................................................................ 4, 8, 18

*Perma Research & Dev. Co. v. Singer Co.*,
   410 F.2d 572 (2d Cir. 1969) ..................................................................................................... 13

*Ruotolo v. City of New York*,
   514 F.3d 184 (2d Cir. 2008) ..................................................................................................... 18

*US Airways, Inc. v. Sabre Holdings Corp.*,
   No. 11-cv-2725 (LGS), 2015 WL 8335119 (S.D.N.Y. Dec. 8, 2015) ............................... 9, 17

**Rules**

Federal Rule of Civil Procedure 16 ................................................................................... 4, 9, 18

Federal Rule of Civil Procedure 26(e) ...................................................................................... 12

Federal Rule of Civil Procedure 37(c) ...................................................................................... 12

**Treatises**

6 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d*, § 1487 (1990 & 2007 Supp.) ...................................................................................... 18

**Other Authorities**

Federal Rule of Civil Procedure 11, 1983 Advisory Committee Note .......................................... 16

S.D.N.Y. Electronic Case Filing Rules and Instructions, Rule 8.4 ............................................. 12

S.D.N.Y. Electronic Case Filing Rules and Instructions, Rule 13.15 .......................................... 12

Defendant HF Management Services, LLC ("Healthfirst" or "Defendant") respectfully submits this reply memorandum of law in support of its motion to dismiss these cases ("Healthfirst Br.") and in opposition to Plaintiff Juana Ortiz's cross-motion for leave to amend the FE SAC.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Second Amended Complaints violate the Court's December 9 Opinion because they are based on the futile theory that the Court excluded from this case and/or contain false and expressly disavowed allegations.  Plaintiffs conceded these failures when, instead of opposing dismissal, they simply filed Third Amended Complaints—which the Court struck from the docket because Plaintiffs had not sought leave of Court or obtained Healthfirst's consent to amend.  Although Plaintiffs now nominally oppose Healthfirst's motion, their opposition papers confirm the defects in the Second Amended Complaints by failing to address issues raised by Healthfirst and acknowledging that, should this case continue, they intend to proceed on a new set of allegations that conflict with the allegations in these pleadings.

Nor have Plaintiffs demonstrated that good cause warrants granting them yet another attempt to file amended pleadings.  Plaintiffs offer no justification for the failure of the Second Amended Complaints to comply with the December 9 Opinion.  They also do not explain why after nearly three years of litigation and their filing of five complaints or proposed complaints (not including the two that the Court struck from the docket) they should be granted leave to try again based on facts not alleged in their prior pleadings.  As set forth herein, they should not.

As shown in Healthfirst's opening brief, Ortiz's FE SAC violates the December 9 Opinion because it is based on the Collective B2 theory of relief that the Court rejected as futile,

---

[1]   Capitalized terms used and not defined herein have the same meaning as in Healthfirst's Memorandum of Law in Support of Healthfirst's Motion to Dismiss these Cases.  (*Ortiz*, ECF No. 13; *Thind*, ECF No. 321.)

*i.e.*, that she worked off the clock without express instruction to meet productivity requirements. Ortiz does not dispute that she changed the definition of the collective from that approved by the Court and that the FE SAC does not allege that she was expressly directed to work off the clock. The FE SAC also violates the December 9 Opinion because the allegations concerning Ortiz's work schedule are inconsistent with her attestation, and the only specific "example" of alleged off-the-clock work pertains to a week during which she admittedly was employed by Healthfirst in a capacity other than as an FE.

Ortiz's cross-motion for leave to amend should be denied for multiple reasons. First, the new allegations contained in her Proposed Third Amended Complaint (*Ortiz*, ECF No. 25-3 (the "Proposed Complaint")) are based on information long known to her, yet Ortiz provides no explanation for her failure to include the new allegations in her prior pleadings. Second, the Proposed Complaint continues to premise an FLSA collective action on the individualized B2 theory. Finally, the Proposed Complaint contains allegations that conflict with Ortiz's prior sworn interrogatory responses regarding her work schedule and the identity of individuals who allegedly directed her to work off the clock. While Ortiz purported to change her interrogatory responses *after* Healthfirst demonstrated that her original sworn statements excluded her from this case, she does not explain her failure to correct these supposed false statements for over a year-and-a-half and prior to filing the FE SAC. Ortiz's amended responses should be rejected as untimely and under the sham issue of fact doctrine.

Thind's Manager SAC violates the December 9 Opinion because it remarkably continues to include the same false and disavowed allegations that Thind included in his prior pleadings, despite his June 2016 promise to remove them should the Court so order. Based on Thind's admissions at his deposition, the Manager SAC, at the very least, significantly inflates the

alleged number of hours that Thind claims to have worked.  It also premises his misclassification claims on the false allegations that he had no managerial responsibilities.  In fact, while purporting to defend them, Thind acknowledges that the allegations concerning his lack of any managerial authority are untrue.  Specifically, contrary to the allegations in the Manager SAC, he now acknowledges that he had some managerial responsibilities, but indicates that he will argue that he was nevertheless misclassified because he did not have sufficient responsibility in hiring and firing.

In addition, while Thind has not filed a cross-motion for leave to amend, his brief includes a request for leave to amend.  To the extent the Court considers this request, it should be denied because Thind has not established that good cause supports granting him leave to amend.  Thind provides no explanation for the Manager SAC's continued inclusion of false and disavowed allegations.  Thind's lack of diligence is further demonstrated by his assertion that he intends to rely on new factual allegations concerning his managerial duties that he did not include in the Manager SAC or any prior pleading.

Based on the history of this case, the proper remedy is to dismiss these actions.  New counsel sought and obtained multiple extensions spanning several months to familiarize themselves with the case.  There is thus no excuse for the failure of the Second Amended Complaints to comply with the December 9 Opinion.  Similarly, there is no justification for Plaintiffs' decisions, only in response to Healthfirst's motion, to change the factual allegations underlying their claims.  Plaintiffs should not be permitted yet another attempt to file pleadings as lead plaintiffs.

## ARGUMENT

## <u>THE COURT SHOULD DISMISS THESE CASES</u>

As shown in Healthfirst's opening brief, the Court should dismiss the FE SAC and the Manager SAC pursuant to its inherent authority because both violate the Court's December 9 Opinion granting limited leave to amend.  Ortiz and Thind do not dispute that the Court has the authority to dismiss an amended complaint that exceeds the scope of its grant of leave.  (*See Ortiz*, ECF No. 24 ("Ortiz Br.") at 5; *Thind*, ECF No. 328 ("Thind Br.") at 2-3.)

The Court also should deny leave to file any additional pleadings because Plaintiffs do not, and cannot, satisfy the "good cause" standard contained in Federal Rule of Civil Procedure ("Rule") 16(b).  (*See* December 9 Opinion at 7-8 (applying the "good cause" standard to Thind's motion for leave to file a second amended complaint).)  "To show good cause, a movant must demonstrate diligence before filing his motion, such that despite the movant's effort, the deadline to amend the pleadings could not have been reasonably met."  (*Id.* at 4 (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)).)  While a movant's diligence is the primary consideration as to whether the good cause standard has been met, leave to amend may also be denied for other good reasons such as prejudice to the nonmoving party, bad faith or undue delay.  (*Id.* at 4-5.)  As shown below, neither Ortiz nor Thind has met the good cause standard because, *inter alia*, they provide no reasonable explanation for their violations of the December 9 Opinion and their proposed new pleadings seek to fundamentally change the allegations underlying their claims.  The Court should therefore deny their requests for leave to amend and dismiss these cases.

I.      **THE COURT SHOULD DISMISS THE FE SAC AND DENY LEAVE TO AMEND**

      A.      **The FE SAC Should Be Dismissed**

           1.    *The FE SAC Violates the Court's Order Because It Does Not Allege that the FEs Were "Expressly" Told to Work Off the Clock*

This Court's December 9 Opinion granted Ortiz leave to file an amended complaint only on behalf of a narrow subset of Opt-in FEs, designated as Collective B1, who allegedly "worked off-the-clock hours to meet Defendant's productivity requirement ***with express instruction*** from managers." (ECF No. 261-2 ¶ 11 (emphasis added); *see* December 9 Opinion at 7-10.) Conversely, it denied as futile any amendment that would include the vast majority of Opt-in FEs, designated Collective B2, who allegedly "worked off-the-clock hours to meet Defendant's productivity requirement ***without express instruction*** from managers." (ECF No. 261-2 ¶ 11 (emphasis added); *see* December 9 Opinion at 7-10.) As shown in Healthfirst's opening brief, the FE SAC violates the December 9 Opinion because it expands the collective definition approved by the Court and bases Ortiz's claims on the futile Collective B2 theory of relief. Ortiz's opposition papers confirm that this is the case.

Ortiz does not dispute that she changed the definition of the collective from that approved by the Court by eliminating the word "express" from the definition. But Ortiz offers no explanation for the change, asserting only that "Defendant raises a distinction, which has no difference . . . ." (*See* Ortiz Br. at 5.) Ortiz's own statements in her brief, however, belie this assertion. Specifically, while proclaiming the lack of significance between "instruction" and "express instruction," Ortiz asserts that "Defendant also enforced a strict 'no unauthorized overtime' policy among the FEs, requiring ***all*** FEs to punch out at the end of their scheduled shifts and ***instructing*** them that they had to complete additional work to meet productivity requirements off the clock." (Ortiz Br. at 3-4 (emphasis added).) In other words, Ortiz claims

that all FEs received instruction concerning off-the-clock work, including the Collective B2 FEs who attested that they did not receive any instruction to that effect, and attempts to expand the definition of the collective in clear violation of the Court's December 9 Opinion.

2.    *The FE SAC Violates the Court's Order by Including a Named Plaintiff Who is Not a Member of the Permitted Collective*

The FE SAC fails to allege that Ortiz was a member of Collective B1 because it does not allege that she was expressly instructed to work off the clock.  Rather, the FE SAC alleges that Ortiz's off-the-clock work occurred without express instruction in order to meet productivity requirements.  (*See* FE SAC ¶¶ 36-37 (alleging that Ortiz worked off the clock "to meet [Healthfirst's] weekly productivity requirement" and that Healthfirst "was **aware** of [her] off-the-clock work, as all Facilitated Enrollers were required to communicate with their managers and advise them of their daily schedules, progress towards meeting their productivity requirements and hours worked.") (emphasis added).)  The FE SAC's allegations in this regard are consistent with her sworn interrogatory responses which, as demonstrated in Healthfirst's opening brief, exclude her from the permitted Collective B1.  (*See* Healthfirst Br. at 14.)[2]

In fact, Ortiz attempts to justify her pleading based on the portion of the December 9 Opinion pertaining to Collective B2.  (*See* Ortiz Br. at 5.)  There, the Court stated that "[i]n order to prove a violation, ***the B2 plaintiffs*** would need to establish that Healthfirst had 'actual or constructive knowledge' that they were working overtime without pay."  (December 9 Opinion at 9 (emphasis added) (citation omitted).)  But in quoting from the December 9 Opinion, Ortiz removes the words "the B2 plaintiffs."  (Ortiz Br. at 5.)  She also fails to note that the Court held

---

2    In response to Healthfirst's motion, Ortiz submitted amended interrogatory responses.  As her amended responses do not bear on Healthfirst's motion to dismiss because the FE SAC does not allege that she was directed to work off the clock or set forth a specific "example" of her off-the-clock work (*see* Healthfirst Br. at 15 (noting that the "example" provided in the FE SAC relates to a period in which Ortiz admittedly did not work as an FE)), Healthfirst addresses them below in opposing her motion for leave to amend.

that a plaintiff must allege more than "actual or constructive knowledge,"—*i.e.*, the Collective B2 theory of relief—to remain in this collective, rejecting this theory as futile because it would necessarily result in individualized inquiries. (*See* December 9 Opinion at 9-10 (granting leave to amend on behalf of only the Collective B1 FEs who "could demonstrate this knowledge with evidence that they were explicitly instructed to work off the clock").) Because the FE SAC includes the futile Collective B2 theory of relief, it exceeds the scope of the Court's limited grant of leave to amend and should be dismissed.

3. *The FE SAC Violates the Court's Order Because It Is Inconsistent with the Information that Has Come Out in Discovery*

The FE SAC also violates the Court's December 9 Opinion because it is inconsistent with Ortiz's sworn interrogatory responses. Contrary to her prior attestation that she "does not recall specific dates, days, or hours worked" (Klugman Ex. D at Response No. 1), the FE SAC sets forth a specific schedule for the entirety of Ortiz's employment as an FE that she now claims to have worked. (*See* FE SAC ¶ 33 (alleging, *inter alia*, that she worked from at least 8:30 a.m. through 6:30 p.m., Monday through Friday "each and every week" and was "frequently" required to work approximately four hours on Saturdays).) The FE SAC is also internally inconsistent because, while purporting to set forth a specific "example" of Ortiz's off-the-clock work as an FE, she identified a workweek that occurred at a time that she was not employed as an FE. (*See* FE SAC ¶¶ 32-34; Healthfirst Br. at 10.)

Ortiz wrongly claims that Healthfirst takes issue with her discovery responses because she "failed to specify **every** instance in which she worked off the clock." (Ortiz Br. at 6 (emphasis added).) The problem, however, is not with Ortiz's interrogatory responses which attest to a lack of recollection as to **any** "specific dates, days, or hours worked"; rather, the

problem is with the FE SAC, which inconsistently includes specific allegations concerning days and hours worked in violation of the December 9 Opinion.  (*See* December 9 Opinion at 10.)

\* \* \* \*

Accordingly, the Court should conclude that the FE SAC fails to comply with the limited grant of leave to amend in the December 9 Opinion and should therefore dismiss the FE SAC.

### B.    The Court Should Deny Ortiz's Request for Leave to Amend

Similar to her decision to file a Third Amended Complaint without first seeking leave, Ortiz's cross-motion ignores the history of this case.  Ortiz joined this case nearly two years ago and is bound by the Court's orders issued during that period, as well as her sworn discovery responses and positions that prior counsel took on her behalf in this litigation.  Based on this history, the Court should deny Ortiz's cross-motion for leave to amend because (1) she has failed to demonstrate good cause to file yet another pleading in this case; (2) her Proposed Complaint still violates the December 9 Opinion; and (3) her sworn interrogatory responses establish that she is not a member of Collective B1.

#### 1.    *Ortiz's Cross-Motion Should Be Denied Because She Has Failed to Demonstrate Good Cause*

Ortiz has failed to satisfy the good cause standard for several reasons.  First, the new allegations contained in the Proposed Complaint are based on information that was available to Ortiz long before she filed the FE SAC.  *See Parker*, 204 F.3d at 340-41 (finding no good cause where the information supporting the proposed amendment was available to the moving party before filing suit).  Ortiz does not claim that her new allegations stem from information learned through discovery since the filing of the FE SAC.  Nor could she, as discovery has been stayed in this action for approximately 16 months.  (*Thind*, ECF No. 251.)  Rather, each new allegation pertains to Ortiz's purported personal experiences while working as an FE at Healthfirst.  To the

extent there is any truth to them, Ortiz must have been aware of this information before joining this case in September 2015, nearly two years before the filing of the FE SAC.

Second, Ortiz provides no explanation for why she omitted these essential allegations from the FE SAC, but instead demonstrates a lack of diligence in failing to include them. Ignoring the Rule 16 standard, Ortiz states only that she "moved diligently to amend" *after* filing the FE SAC.  (Ortiz Br. at 8.)  Rule 16, however, requires Ortiz to demonstrate that, despite her diligence *before* filing the FE SAC, she could not have included these new allegations.  (*See* December 9 Opinion at 4 (holding that, to show good cause, the movant must demonstrate that "despite [her] effort, the deadline to amend the pleadings could not have been reasonably met").) For example, her Proposed Complaint contains a new allegation regarding her schedule during a specific week that she worked nearly five years ago.  (Proposed Complaint ¶ 34.)  Ortiz does not explain why she was unable to include this allegation in the FE SAC, and in fact admits that it is an entirely new addition.  (Ortiz Br. at 9.)  She therefore has not met her burden of justifying her failure to include these allegations in the FE SAC.

Third, Ortiz has not met the good cause standard because she has changed the facts underlying her claim nearly two years after she joined this case.  As Ortiz concedes, "[t]he good cause standard is not met when the proposed amendments 'would change fundamentally the factual allegations of the plaintiff's claim against the defendant.'"  (*Id.* at 7-8 (quoting *US Airways, Inc. v. Sabre Holdings Corp*., No. 11-cv-2725 (LGS), 2015 WL 8335119, at *2 (S.D.N.Y. Dec. 8, 2015).)  As evidenced by her filing of revised interrogatory responses, Ortiz at this late date has changed both the facts and theory underlying her claim.  While, as discussed below, the Court should reject her new interrogatory responses for several reasons, this filing

demonstrates the absence of good cause because she bases her new pleading on different facts from those on which she proceeded throughout the course of this case.

> 2. *Ortiz's Cross-Motion Should Be Denied Because the Proposed Complaint Continues to Violate the Court's December 9 Opinion*

The Court should also deny leave to amend because the Proposed Complaint continues to violate the December 9 Opinion by alleging the futile Collective B2 theory of relief.   As described above, the December 9 Opinion barred any amended complaint from including the futile Collective B2 theory that Healthfirst was aware of Plaintiffs' overtime work solely by virtue of setting productivity requirements, in the absence of an express instruction. (December 9 Opinion at 9-10.)   Yet Ortiz's Proposed Complaint includes the same Collective B2-related allegations concerning Healthfirst's alleged awareness of Ortiz's off-the-clock work as those contained in the FE SAC.  (Proposed Complaint ¶¶ 35-36.)

Moreover, the Proposed Complaint still fails to include any allegations that Ortiz was "expressly told to work off the clock" as the Court required in the December 9 Opinion. (December 9 Opinion at 8.)   While the Proposed Complaint adds an allegation that Ortiz was "instructed" to work "more than her regularly scheduled hours to meet her performance goals," and "that she was not eligible to be paid for her overtime hours unless she met her performance goals" (Proposed Complaint ¶ 38), this allegation stops short of actually alleging the only theory of relief authorized by the December 9 Opinion:  an express instruction to perform overtime work off the clock.  (December 9 Opinion at 8.)  Rather, it appears to be yet another instance of Ortiz carefully wording an allegation so as to retain the dismissed B2 theory.

> 3. *Ortiz's Cross-Motion Should Be Denied Based on Her Sworn Interrogatory Responses*

Finally, Ortiz's cross-motion should be denied based on her sworn interrogatory responses dated January 5, 2016 (the "Sworn Responses").  (Klugman Decl. Ex. D.)  Given that

significant discovery has occurred in this case, the Court may look outside the pleadings in assessing Ortiz's motion to amend.  (*See* December 9 Opinion at 5.)  As shown in Healthfirst's opening brief, Ortiz attested to facts that refute any claim that she was expressly directed to work off the clock during the period relevant to her FLSA claim.  (*See* Healthfirst Br. at 10.)  Ortiz's own sworn statements therefore establish that she is not a member of Collective B1.

Recognizing these issues, Ortiz attached newly amended interrogatory responses to her cross-motion (the "Amended Responses").  (Ortiz Br. Ex. B.)  Ortiz provides no explanation as to why her prior sworn answers were inaccurate or why she did not amend the Sworn Responses prior to the conclusion of the written discovery period or prior to filing the FE SAC.  Dated more than four-and-a-half years after the events at issue and approximately 19 months after Ortiz signed the Sworn Responses, the Amended Responses change the fundamental facts underlying Ortiz's allegations—*i.e.*, her alleged work schedule, the identity of her supervisors and the identity of any individuals who she claims directed her to work off the clock.

For example, in response to Healthfirst's Interrogatory No. 1, Ortiz originally attested in her Sworn Responses that she "d[id] not recall specific dates, days, or hours worked."  (Klugman Decl. Ex. D at Response No. 1.)  But, because it has become essential to her Proposed Complaint, Ortiz now claims in her Amended Responses that she "does not recall *all* locations, dates, days, or hours worked" but recalls the approximate number of hours she worked in one specific week almost five years ago.  (Ortiz Br. Ex. B at Response No. 1 (emphasis added).)[3] Similarly, in response to Healthfirst's Interrogatory No. 4, which requested that she "identify each person at Healthfirst to whom that Opt-in Plaintiff reported," Ortiz's Amended Responses

---

[3]   Ortiz claims to have worked 55 hours in the new week identified in the Amended Responses and Proposed Complaint.  (Proposed Complaint ¶ 34.)  Notably, Ortiz claimed to have worked the same 55 hours during the week she identified in FE SAC, which, as noted above, occurred at a time she was not an FE.  (FE SAC ¶ 34.)  This apparent coincidence provides another basis for calling into question the reliability of Ortiz's Amended Responses.

added two additional individuals to the list set forth in her Sworn Responses, including Alex
Diaz. (*Compare* Klugman Decl. Ex. D at Response No. 4 *with* Ortiz Br. Ex. B at Response
No. 4.)

Ortiz also amended her interrogatory response that excluded her from Collective B1. In
response to Healthfirst's Interrogatory No. 2, which asked her to "identify each person who, at
any time, directed [her] to work off-the-clock, *i.e.* at a time when [she] was not punched in or
clocked in," Ortiz's Sworn Responses identified only Mildred Ramos, who had not been
employed with Healthfirst for more than six years prior to the date that Ortiz joined this case.
(Klugman Decl. Ex. D at Response No. 2.) In response to Healthfirst's motion, Ortiz amended
this answer without explanation to add two additional individuals, including Alex Diaz who, as
noted above, Ortiz added to her list of supervisors. (Ortiz Br. Ex. B at Response No. 2.) As
Ortiz served these responses well past the discovery deadline, without any explanation for why
she is changing them now, the Court should reject Ortiz's Amended Responses as both untimely
and as a sham.[4]

As an initial matter, the Amended Responses should be rejected as untimely. Under
Rule 26(e), a party may supplement an interrogatory response only "in a timely manner if the
party learns that in some material respect the disclosure or response is incomplete or incorrect."
Where, as here, a party fails to do so, Rule 37(c) prevents that party from using that late-
disclosed information "to supply evidence on a motion . . . unless the failure was substantially
justified or is harmless." *See Haas v. Delaware & Hudson Ry. Co.*, 282 F. App'x 84, 85–87 (2d

---

[4]    The Amended Responses should also be disregarded because Ortiz did not actually sign them, but instead
included only an electronic signature in violation of this District's rules. *See* S.D.N.Y. Electronic Case Filing
Rules and Instructions, Rule 8.4 ("A document requiring the signature of a party or witness shall be
electronically filed in a scanned format that contains an image of the actual signature."); Rule 13.15 ("The filing
attorney may sign a document by placing an 'S/' before his or her typed name or by using a digital image of his
or her signature. . . . Signatures for all others (clients, witnesses, etc.) must be scanned in order to capture the
ink signature.")

Cir. 2008) (summary order) (affirming district court's refusal to consider affidavit amending interrogatory response served after discovery period in opposition to motion for summary judgment).

Ortiz failed to amend the Sworn Responses for nearly a year-and-a-half, and her filing of the Amended Responses occurred well after the Court-ordered deadline to respond to these interrogatories, *i.e.*, February 29, 2016 (*see Thind*, ECF No. 241 §§ II(a), II(e)), and the date on which the parties stipulated that written discovery had closed, *i.e.*, April 15, 2016 (*see Thind*, ECF No. 249 at 1).  Ortiz makes no attempt to justify her late amendment, and the Amended Responses include evidence directly relevant to Ortiz's allegations.  As Ortiz's Amended Responses were served over a year past a Court-ordered deadline, with no justification for the delay, they should be disregarded.  *See Haas*, 282 F. App'x at 86–87 (affirming district court finding that unjustified disclosure of evidence "directly relevant" to core claims "after the yearlong discovery phase had ended" "cannot be considered harmless").

Ortiz's amended interrogatory responses should be also disregarded under the "sham issue of fact" doctrine.  That doctrine broadly states that when a defendant makes a motion in reliance on an unambiguous factual admission by the plaintiff, the plaintiff cannot defeat that motion simply by attaching an affidavit disavowing that admission.  *See Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *see also In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193–94 (2d Cir. 2013) (stating that the sham issue of fact doctrine allows a court to reject a plaintiff's attempt, in response to a defendant's motion, to "manufactur[e] a factual dispute by submitting testimony" whose contradictions to prior testimony are "unequivocal and inescapable, unexplained, arose after the [defendant's motion] was filed, and are central to the claim at issue.").  While this doctrine is typically invoked where a party files an affidavit that

contradicts prior deposition testimony in opposition to a motion for summary judgment, *see In re Fosamax*, 707 F.3d at 193–94, it also applies to other forms of discovery, *see Margo v. Weiss*, 213 F.3d 55, 60–61 (2d Cir. 2000) (holding that "plaintiffs cannot defeat a motion for summary judgment . . . by filing 'supplemental answers' to interrogatories") and at other stages of litigation, *see Kassman v. KPMG LLP*, No. 11-cv-03743 (LGS), 2014 WL 3298884, at *11 (S.D.N.Y. July 8, 2014) (applying doctrine in evaluating motion to dismiss for lack of subject matter jurisdiction); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 334 n.5 (S.D.N.Y. 2014) (applying doctrine in evaluating motion to compel arbitration).

Ortiz's filing of the Amended Responses to counter Healthfirst's motion to dismiss is precisely the conduct to which the sham issue of fact doctrine applies.  Based on the filing of Healthfirst's motion to dismiss, it became readily apparent to Ortiz that she could not continue in this case based on her Sworn Responses.  She therefore submitted the Amended Responses attesting to new facts that go to the core of the Collective B1 theory of relief, namely, the identity of the Healthfirst employees who allegedly expressly directed her to work off the clock as an FE. Ortiz provides no explanation for her altered recollection or why the Sworn Responses did not contain this information.  As the Amended Responses create nothing more than a "sham issue of fact," they should be disregarded.

Accordingly, because Ortiz's Sworn Responses demonstrate that she is not a member of Collective B1, they provide an independent basis for denying her cross-motion for leave to amend.

## II.   THE COURT SHOULD DISMISS THE MANAGER SAC AND DENY LEAVE TO AMEND

### A.    The Manager SAC Should Be Dismissed

As shown in Healthfirst's opening brief, the Manager SAC's allegations that Thind did not exercise any managerial authority conflict with his deposition testimony and other

information that has come out in discovery.  (Healthfirst Br. at 16.)  Specifically, the Manager

SAC's allegation that Thind and other managers did not "direct the work of any other

employees" and were restricted to "only . . . readjust[ing] work assignments" (Manager SAC

¶¶ 30, 31) conflicts with, *inter alia*, Thind's deposition testimony as to his primary duties as

manager.  (*See* Healthfirst Br. at 16 (quoting from Thind's deposition testimony).)  In fact, the

excerpted portion of Thind's deposition testimony attached to his opposition papers further

refutes these allegations because he testified therein that "Manager positions are considered as

leaders" at Healthfirst in that they were responsible for leading a team of employees.  (Marino

Decl. Ex. 1 at 51:24-53:19.)

     While purporting to defend these allegations (*see* Thind Br. at 5-6), Thind acknowledges

that they are untrue and that he intends to proceed on factual allegations that conflict with those

alleged in the Manager SAC should this case continue.  Specifically, Thind states as follows:

> [Thind] alleges on behalf of himself and all others similarly situated that he was
> misclassified as exempt as a Sales Manager.  In particular, ***while [Thind] and the***
> ***putative collective/class members may have engaged in certain managerial***
> ***responsibilities***, they neither had the requisite discretion and control, nor the
> requisite involvement in hiring or firing to satisfy the executive exemption.

(*Id.* at 1 (emphasis added).)  Thind, however, chose not to include the factual allegations

underlying this argument in the Manager SAC.  There are no allegations concerning hiring and

firing nor an acknowledgement that Thind and other managers engaged in certain managerial

responsibilities.  Rather, the Manager SAC contains only the allegations that Thind and other

managers "d[id] not exercise any independent authority" or "direct the work of any other

employees," which Thind disavowed in his deposition testimony and now in his opposition brief.

     The Court should also reject Thind's tortured spin on the allegation concerning his hours

worked and conclude that, as Thind testified, the Manager SAC's allegations concerning his

work hours are false.  As to the amount of his overtime work, the Manager SAC alleges that,

"[t]hroughout [Thind's] *entire period* of employment as a 'Manager for Sales,' [Healthfirst] required [Thind] to work, and [Thind] did in fact work, between seventy and eighty hours per week, seven days a week, all for [Healthfirst's] benefit." (Manager SAC ¶ 32 (emphasis added).) By its plain meaning, this paragraph alleges that Thind worked 70-80 hours per week each week. Notably, Thind himself interpreted this paragraph similarly during his deposition, testifying, without prompting from counsel, that he interpreted this paragraph as falsely alleging that he worked these hours "all the time":

> Q. This paragraph says that you worked between 70 and 80 hours per week seven days a week during the time you were employed as a manager. Is that what this paragraph says?
>
> A. *Not all the time*. . .

(Klugman Decl. Ex. B at 302:18-303:1 (emphasis added).) Moreover, this paragraph is not, as Thind claims, "substantially true" (*see* Thind Br. at 5) because Thind, without being prompted by leading questions, testified that he worked an average of 50-60 hours per week (Klugman Decl. Ex. C at 256:15-257:9) and expressed uncertainty and lack of recollection as to whether he ever worked above 70 hours per week even after reviewing this allegation in the Complaint (*id.* Ex. B at 303:8-15 ("My hours varied. Like I said, 50 to 60, *can be 70 to 80, I'm not good with my memory. So I could have more hours, yes*.") (emphasis added).)

In addition, the fact that Thind claimed, without support, to have recalled his exact schedule during his last week at Healthfirst at the time he filed the original Complaint in December 2014 does not provide Thind with a good faith basis for including these allegations in newly-filed pleadings. (*See* Thind Br. at 4.) It is undisputed that Thind had no recollection as to his schedule during his last week at the time of his 2015 deposition and Thind does not claim to have a good faith basis to support this allegation at the time he filed the Manager SAC. (*See* Healthfirst Br. at 11-12.) Given that a court "should test the signer's conduct by inquiring what

was reasonable to believe at the time the pleading . . . was submitted," Rule 11, 1983 Advisory Committee Note, Thind improperly included this allegation in his amended pleading.

Accordingly, the Court should dismiss the Manager SAC because it is inconsistent with the information that has come out in discovery.

### B.     The Court Should Deny Thind's Request for Leave to Amend

In the Court's Order striking Thind's Third Amended Complaint (*Thind*, ECF No. 327), the Court permitted Thind to move for leave to amend by August 8, 2017.  While Thind did not file a motion for leave to amend, he nonetheless requests this relief in his brief.  (*See* Thind Br. at 7.)  To the extent the Court considers this request, the Court should deny it for several reasons.

First, Thind has not met the good cause standard because he offers no reasonable explanation for his inclusion in the Manager SAC of the same false and disavowed allegations as those contained in his prior pleading.  Thind asked the Court to excuse this same conduct last year in connection with seeking leave to file a second amended complaint because he asserted that he was attempting to comply with his understanding of the Court's direction concerning leave to amend.  (*See* December 9 Opinion at 9.)  Thind cannot legitimately state that he has the same understanding now given the Court's clear direction that any future pleadings must be consistent with the information that has come out in discovery.  (*Id.* at 10.)

Second, Thind cannot satisfy the good cause standard because his brief reflects that he intends to proceed on new allegations concerning his managerial authority that he could have included in any of his prior pleadings, but did not.  As discussed above, contrary to the Manager SAC and his prior pleadings, Thind now acknowledges that he had some managerial authority and that should this case continue, he will base his claims on factual allegations that conflict with those alleged in the Manager SAC and prior pleadings, and on which he obtained conditional certification.  Thind thus proposes to "change fundamentally the factual allegations of plaintiff's

claim against the defendant" in the manner that Rule 16 bars. *US Airways*, 2015 WL 8335119, at *2 (internal quotation marks omitted). Thind does not argue that this shift is based on new facts uncovered since filing the Manager SAC, nor could he given the present stay of discovery. (*See Thind*, ECF No. 251.) As Thind makes no attempt to explain why he did not plead these allegations in the Manager SAC (or any prior pleading), *see Parker*, 204 F.3d at 340, he cannot establish that good cause justifies granting him the opportunity to file another amended pleading.

Third, as Thind appears to recognize, allowing him to proceed on new factual allegations at this stage would prejudice Healthfirst. *See Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (citing 6 Wright, Miller & Kane, § 1487, at 623 and n.9 for the proposition that an "amendment is prejudicial when it 'substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation'")). In fact, in filing the Manager SAC, Thind stated that he "merely repeated the claims previously asserted in the original complaint so as to avoid any claim by Defendant that they [sic] were prejudiced in having to defending [sic] new claims or facts almost three years after the commencement of the action." (Thind Br. at 3.)

Accordingly, the Court should deny Thind's request for leave to file a third amended complaint.

## III.    THE COURT SHOULD DISMISS THESE CASES

As detailed in Healthfirst's opening brief, the proper remedy at this stage of these proceedings is to dismiss these actions. Thind's history of false pleadings and Ortiz's disavowal of her prior sworn statements render each of them inadequate to serve as lead plaintiffs in representative actions. Moreover, despite receiving multiple extensions to enable new counsel to familiarize themselves with this case, the Second Amended Complaints fail to remedy the pleading deficiencies of which Plaintiffs were on notice based on the Court's rejection of the

proposed second amended complaint in the December 9 Opinion.  *See Farsetta v. Dep't of Veterans Affairs*, No. 16-cv-6124 (DLC), 2017 WL 3669561, at *8 (S.D.N.Y. Aug. 24, 2017) (denying leave to file an amended complaint based on the failure to remedy pleading deficiencies of which plaintiff was on notice).  Plaintiffs therefore should not be permitted yet another attempt to file pleadings that comply with the Court's orders.  In addition, Plaintiffs should not be permitted to restart these cases based on new allegations that they could have alleged in prior pleadings, but did not.  The Court should instead dismiss the claims of Plaintiffs and the remaining Opt-in Plaintiffs without prejudice, which would allow them the opportunity to file individual actions to the extent they can do so consistently with the facts and the law.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the FE SAC and Manager SAC, deny Plaintiffs leave to amend, dismiss the claims of Plaintiffs and the remaining Opt-in Plaintiffs without prejudice and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
       September 1, 2017

By:    S/ Scott B. Klugman
      Scott B. Klugman
      Seth L. Levine
      Aaron I. Karp
**LEVINE LEE LLP**
650 Fifth Avenue, 13th Floor
New York, New York 10019
Telephone:  (212) 223-4400
Facsimile:  (212) 223-4425
sklugman@levinelee.com
slevine@levinelee.com
akarp@levinelee.com

Andrew P. Marks
**LITTLER MENDELSON P.C.**
900 Third Avenue
New York, New York 10022
Telephone:  (212) 583-9600
Facsimile:  (212) 832-2719
amarks@littler.com

*Attorneys for Defendant*
*HF Management Services, LLC*
